868 A.2d 1120 (2005)
375 N.J. Super. 624
STATE of New Jersey, Plaintiff-Respondent,
v.
CLARKSBURG INN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 26, 2005.
Decided March 11, 2005.
*1122 Richard J. Simon, New Brunswick, argued the cause for appellant.
Simon L. Kaufman, Edison, argued the cause for respondent (Lomurro, Davison, Eastman & Munoz, attorneys; Mr. Kaufman, on the brief).
Before Judges NEWMAN, AXELRAD and HOLSTON, JR.
*1123 The opinion of the court was delivered by
HOLSTON, JR.
Defendant, Clarksburg Inn (Inn), appeals the January 30, 2004 order of the Superior Court, Law Division, Monmouth County entered after a trial de novo on the record of the September 29, 2003 trial before the Millstone Township Municipal Court, finding defendant guilty of two violations of Millstone Township Anti-Noise Ordinance No. 3-15 (Ordinance) on February 1, 2003 and June 20, 2003, respectively. Defendant does not challenge the factual conclusions reached by the Law Division. Instead, defendant seeks a reversal of the two guilty verdicts based on two grounds. The first claim is that the Ordinance is unconstitutional on its face because it is impermissibly vague and overbroad. Second, it is unconstitutional as applied, because the Ordinance was applied in a subjective manner without taking into account the reasonableness of defendant's conduct. We affirm.
Defendant makes the following arguments for our consideration on this appeal.
POINT I
THE DEFENDANT'S CONVICTIONS BELOW SHOULD BE VACATED BECAUSE THE MILLSTONE ANTI-NOISE ORDINANCE IS IMPERMISSIBLY VAGUE, AND VIOLATES THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.
A. An ordinance is unconstitutional and violates due process if persons of common intelligence must necessarily guess at its meaning and differ as to its application.
B. Millstone Ordinance No. 3-15 is unconstitutionally vague and unenforceable.
C. A constitutionally sound noise ordinance contains objective criteria for definitions and enforcement, such as sound decibel levels.
D. The Law Division's decision should be reversed because sufficient credible evidence present in the record does not exist to uphold its conclusion that the ordinance is constitutional.
POINT II
THE MUNICIPAL COURT ERRED BY APPLYING THE ORDINANCE IN A SUBJECTIVE MANNER, AND NOT TAKING INTO ACCOUNT THE REASONABLENESS OF THE DEFENDANT'S CONDUCT.
On February 1, 2003, the Clarksburg Inn was issued Summons XXXX-XXXXXX on a complaint of excessive noise. On May 27, 2003, the case was listed for trial before Judge Gelson at the Millstone Township Municipal Court. Following a conference between the municipal prosecutor, defense counsel and witnesses, the Township agreed to defer prosecution for ninety days, and if there were no further complaints of noise violations, the summons would be dismissed. There was an agreement that the noise level from music would be lowered and monitored, that there would be no live bands or music on the deck, and that no noise would be audible from a distance of 100 feet away.
Defendant violated the terms of the agreement on June 20, 2003 and July 12, 2003. Summons XXXX-XXXXXX was issued for the June 20, 2003 violation and Summons XXXX-XXXXXX was issued for the July 12, 2003 violation.
On September 9, 2003, the matter was listed for trial before Judge Gelson. The judge proceeded on the summonses for the February 1 and June 20, 2003 violations. The court did not proceed with the July 12, 2003 violation.
*1124 The State's first witness, Roger Weltner, testified that he lived eighty-one feet from Clarksburg Inn on the same side of the street and that he had been enduring ongoing disturbances from loud music from the Inn, a bar/package store, since June 26, 2002. Weltner stated that on February 1, 2003, he was at home in his bedroom with the windows closed. He was disturbed by "very loud" music, which he could clearly hear from a live band playing at the Inn. He could not sleep. Weltner found it necessary to call the State Police three times that evening: first at 9:47 p.m., again at 11:02 p.m. and a third time at 11:45 p.m. The noise remained continually loud and disturbing throughout the evening. Finally, after a third call, the loud noise emanating from the Inn subsided.
Weltner testified that the second incident occurred when he arrived home from work at 4:00 p.m. on June 20, 2003. A disc jockey was playing music on the deck of the Inn. Weltner was disturbed by the sound level of the noise being generated from defendant's premises, which was "very loud" to the extent that he could actually discern the words being sung from that distance. Before he came home, his wife had called the Inn to complain about the noise. Weltner again called the State Police who responded, and the loud noise ended.
Roger Strickland, the State's second witness, testified to living 270 feet from defendant's premises on the opposite side of the street. On February 1, 2003 at approximately 9:00 p.m., he was inside his home with the windows closed watching television when he was disturbed by "clearly audible" loud noise and music coming from the Inn. The noise was so loud that it drowned out the sound of his television and caused his windows to vibrate. He testified that the noise was annoying and disturbing and persisted until after midnight.
Strickland further testified that on June 20, 2003 at approximately 4:00 p.m., he was again disturbed by loud noise and music coming from the Inn. The noise was clearly audible from 270 feet away but seemed to him like it was only ten feet away. The music was so loud that he could hear the lyrics. The noise disturbed Strickland's peace and quiet. Strickland was so annoyed that he contacted defendant's attorney to complain about the noise.
Dris Kowalic testified to living 500 to 600 feet from the Inn. During the winter months of 2003, he was disturbed by loud music coming from the Inn every weekend. His windows were closed, but he could still hear the music, loud bass, and people singing from that distance. The disturbance stopped for about two weeks after the May 27, 2003 municipal court proceeding but then continued to be loud on the weekends. The noise was so loud and disturbing that Kowalic could only sleep in the back room of his home.[1]
State Trooper M. Budrewicz testified that on February 1, 2003, he went to the Clarksburg Inn three times on noise complaints from Weltner and Strickland. The first two times, he spoke to a man named Watkins, who was the "guy in charge" at the Inn. The trooper asked that the noise be turned down. When the trooper returned the third time, he issued a summons.
*1125 The defense presented no witnesses. Neither the State nor defense counsel made a closing statement. Judge Gelson found the Clarksburg Inn guilty as to both summonses. The sentence for the first summons was a $500 fine and $30 costs. The sentence on the second summons was $750 fine and $30 costs. The payment of fines was stayed pending appeal.
On September 30, 2003, the Clarksburg Inn appealed. After a trial de novo on the municipal court record in the Law Division on January 30, 2004, Judge Kreizman found defendant guilty as to both summonses, entered a judgment of conviction and imposed the same sentence as the municipal court.

I
"A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty v. Township Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) (citing State v. Brown, 118 N.J. 595, 604, 573 A.2d 886 (1990)). Therefore, our review of defendant's constitutional challenge to Millstone Township's noise ordinance as impermissibly vague in violation of the due process clause of the Fourteenth Amendment is de novo.
Defendant contends that based on the language of the Ordinance, the legality of a person's conduct is judged solely by the subjective opinions of complaining citizens and police officers. Defendant claims that the subjective nature of the Ordinance's wording renders the Ordinance unconstitutional since it is impermissibly vague.
Criminal statutes should be clear and understandable in order to achieve two goals: notice of illegality and clear standards for enforcement. "[I]f a law is so vague `that persons of common intelligence must necessarily guess at its meaning and differ as to its application,' it is considered void and unenforceable." State v. Rogers, 308 N.J.Super. 59, 65, 705 A.2d 397 (App.Div.)(quoting Town Tobacconist v. Kimmelman, 94 N.J. 85, 118, 462 A.2d 573 (1983)), certif. denied, 156 N.J. 385, 718 A.2d 1214 (1998) (internal citation omitted).
A municipal ordinance under review by a court enjoys a presumption of validity and reasonableness. First Peoples Bank of New Jersey v. Township of Medford, 126 N.J. 413, 418, 599 A.2d 1248 (1991). Municipal ordinances are liberally construed in favor of the municipality and are presumed valid. State v. Golin, 363 N.J.Super. 474, 481, 833 A.2d 660 (App.Div.2003). It is the burden of the party seeking to overturn the ordinance to prove otherwise. Id. at 481-82, 833 A.2d 660. "However, because municipal court proceedings to prosecute violations of ordinances are essentially criminal in nature, penal ordinances must be strictly construed." Id. at 482, 833 A.2d 660 (citing State, Tp. of Pennsauken v. Schad, 160 N.J. 156, 171, 733 A.2d 1159 (1999)). A penal ordinance that fails to provide legally fixed standards and adequate guidelines for police and others who enforce the laws violates due process. Ibid. While the ordinance or statute does not have to be specific in all regards, it should be "`afforded flexibility and reasonable brea[d]th,' given the nature of the problem and the wide range of human conduct." State v. Stafford, 365 N.J.Super. 6, 15, 837 A.2d 1118 (App.Div.2003) (quoting Chez Sez VIII, Inc. v. Poritz, 297 N.J.Super. 331, 351, 688 A.2d 119 (App.Div.), certif. denied, 149 N.J. 409, 694 A.2d 194, cert. denied, 522 U.S. 932, 118 S.Ct. 337, 139 L.Ed.2d 262 (1997)).
The vagueness doctrine sets forth the principle that "the law must `give *1126 the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'" Ibid. (quoting Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227 (1972)). "To withstand a void-for-vagueness challenge, a penal ordinance must define the offense `with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" Golin, supra, 363 N.J.Super. at 482-83, 833 A.2d 660 (quoting Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983)).
The governing body of every municipality may make, amend, repeal and enforce ordinances to preserve the public peace and order and to prevent disturbing noises. N.J.S.A. 40:48-1. In addition, any municipality may make, amend, repeal and enforce ordinances as it may deem necessary and proper for the good government, order and protection of persons and property and for the preservation of the public health, safety and welfare of the municipality and its inhabitants. N.J.S.A. 40:48-2.
Millstone Ordinance No. 3-15 provides, in relevant part:
3-15.1 Noise Prohibited. It shall be unlawful for a person to make, continue or cause to be made or continued any loud, unnecessary or unusual noise or any noise which does or is likely to annoy, disturb, injure or endanger the comfort, repose, health, peace or safety of others.

3-15.2 Definition of Noise. Without intending to limit the generality of subsection 3-15.1, the following acts are hereby declared to be examples of loud, disturbing and unnecessary noise in violation of this section:
a. Radios; Televisions; Phonographs. The playing, use or operation of any radio receiving set, television, musical instrument, phonograph or other machine or device for the producing or reproducing of sound in such manner as to disturb the peace, quiet and comfort of neighboring inhabitants or with louder volume than is necessary for convenient hearing for persons who are in the room, vehicle or chamber in which the machine or device is operated and who are voluntary listeners. The operation of such a set, instrument, phonograph, machine or device so that it is clearly audible at a distance of one hundred (100') feet from the building, structure or vehicle in which it is located shall be prima facie evidence of a violation of this section.
[(emphasis added).]
Defendant contends that the language in Section 3-15.1 of the Ordinance is ambiguous. Defendant claims that the terms "loud," "unnecessary" and "unusual" are subjective and lack any objective component. Also unclear are the terms and phrases "likely to annoy," "disturb," "injure" or "endanger the comfort, repose, health, peace or safety of others." Further, defendant argues that the phrase "clearly audible" in the Ordinance is vague. We disagree.
In State v. Holland, 132 N.J.Super. 17, 21, 331 A.2d 626 (App.Div.1975), the defendant was found guilty of violating a noise ordinance, which read, in relevant part:
(a) The making, creation or permitting of any unreasonably loud, disturbing or unnecessary noise in the Village is hereby prohibited.
(b) The making, creating or permitting of any noise of such character, intensity or duration as to be detrimental to the life, health or welfare of any individual or which either steadily or intermittently annoys, disturbs, injures or endangers *1127 the comfort, repose, peace of safety of any individual is hereby prohibited.
[(emphasis added).]
In reviewing the matter de novo, the Law Division found that the provision was unconstitutionally vague. Id. at 22, 331 A.2d 626. This court reversed, determining that noise regulation is a "subject matter [which] renders specific and precise definitions of prohibited conduct difficult to formulate." Id. at 23, 331 A.2d 626. In determining that the ordinance intended to prohibit noises that would disturb the peace and constitute common law nuisance, this court further explained:
From the beginning our cases dealing with nuisances based upon noise have held that the matter is a relative one, requiring the weighing of the competing interests and rights of the parties in each case, and that to constitute a nuisance and a disturbance of the peace a noise must be an [u]nreasonable one in the circumstances or cause [m]aterial annoyance. The leading case, and the one most often cited, is Benton v. Kernan, 130 N.J. Eq. 193, 21 A.2d 755 (E. & A.1941) which laid down the test that "A noise may constitute an actionable nuisance ... but it must be a noise which affects injuriously the health or comfort of ordinary people in the vicinity to an unreasonable extent ", and it "... becomes actionable only when it passes the limits of reasonable adjustment to the conditions of the locality and of the needs of the maker to the needs of the listener[.]"
[Id. at 25-26, 331 A.2d 626 (emphasis added).]
The language set forth in Holland is strikingly similar to the Ordinance here. The Ordinance does not explicitly define the terms "loud," "unnecessary," "unusual," "annoy," "disturb," "injure," "endanger" or "audible" that defendant contends are vague and ambiguous. Therefore, its plain meaning should be applied in construing the Ordinance as a whole. The terms, "unusual" and "audible," are not explicitly set forth in the Ordinance. The ordinary definition of "[a]udible" is: "capable of being heard[ ]" while "unusual" is defined as: "not usual, common, or ordinary." Webster's II New College Dictionary 73, 1211 (2d ed.1999). "[A] reviewing court should not give undue emphasis to the presence or absence of a single word. The ordinance should be examined in the context of the entirety of its language giving due deference to the title and its overall intent." Downs Ford, Inc. v. Dover Tp., 230 N.J.Super. 623, 627, 554 A.2d 882 (Ch.Div.1989)(citing Holland, supra, 132 N.J.Super. at 24, 331 A.2d 626).
This court in State v. New York Cent. R. Co., 37 N.J.Super. 42, 48, 116 A.2d 800 (App.Div.1955), stated: "That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls, is not a sufficient reason to hold the language too ambiguous to define a penal offense." No more than a reasonable degree of certainty can be demanded. In that case, the defendant was found liable for violating a noise ordinance which read, in part: "Whatever loud and unnecessary noise which disturbs the public peace ... between the hours of Eleven o'clock P.M. and Seven o'clock A.M. is hereby declared a nuisance and is prohibited." Id. at 45, 116 A.2d 800. There, the defendant's idling train engines caused loud and unnecessary noise during the night. Ibid.
In State v. Smith, 46 N.J. 510, 514, 218 A.2d 147, cert. denied, 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 (1966), the Supreme Court sustained a statute which provided that "Any person who by noisy or disorderly conduct disturbs or interferes with the quiet or good order of any place *1128 of assembly . . . is a disorderly person." The Court said:
[D]efendant says the statute is void for vagueness because it does not spell out the degree of noise or the details of a disorder which will offend. Of course, the statute does not do so in specific terms, and it may be doubted that the ingenuity of man could meet that demand if the Constitution made it. But the Constitution does not insist upon the impossible. It asks only what the subject will reasonably permit, and hence if there is a public interest in need of protection, due process does not stand in the way merely because the subject defies minute prescription.
[Id. at 518, 218 A.2d 147.]
"[F]ormulating a specific and precise ordinance regulating noise and disturbances of the peace is a difficult task." State v. Friedman, 304 N.J.Super. 1, 6, 697 A.2d 947 (App.Div.1997) (citing State v. Holland, supra, 132 N.J.Super. at 23, 331 A.2d 626). However, "an ordinance regulating [loud, disturbing, and unnecessary noises] may utilize general language so long as it notifies the public of the conduct it proscribes." Ibid. (citing State v. Powell, 250 N.J.Super. 1, 7, 593 A.2d 342 (App.Div.1991)).
In Powell, the defendant was driving his motor vehicle and was stopped for playing loud music. This court reviewed the ordinance that stated that it was unlawful for any person to make any "excessive[ ], unnecessary or unusually loud noise which either annoys, injures, disturbs or endangers the comfort, health, repose, peace or safety of others within the City...." State v. Powell, supra, 250 N.J.Super. at 4, 593 A.2d 342. We held that the ordinance was specific enough to pass constitutional muster under the void-for-vagueness test and that similar challenges to anti-noise ordinances had been rejected in the past where the noise constituted a common law nuisance. Id. at 5, 593 A.2d 342.
In Bynum v. Mayor and Tp. Comm. of Winslow Tp., 181 N.J.Super. 2, 5, 436 A.2d 532 (App.Div.1981), certif. denied, 89 N.J. 440, 446 A.2d 162 (1982), Randall Bynum sought to prevent his prosecution by the township for allegedly violating the township ordinance restriction of the use of radio transmitters, which adversely affected other township residents' reception of television, stereo and other electronic devices. The ordinance provided that it would be unlawful to transmit radio signals that caused or created electrical visual or audible interference or that annoyed, disturbed, or endangered the comfort, repose, health, peace, safety or general well-being of others within the limits of the township. Id. at 4, 436 A.2d 532. This court held that the regulation was "clear, specific and reasonable" since it dealt with the abatement of noise nuisances that interfere with the use and enjoyment of property of others. Id. at 6, 436 A.2d 532. Since the ordinance sought to ban loud and unusual noises that annoy, disturb, injure, or endanger the comfort, repose, health, peace, safety of others, we ruled it was an entirely proper exercise of police power to protect the health, safety and welfare of local residents by abatement of nuisances and preservation of order. Ibid. To that end, we found that "municipalities may adopt ordinances regulating or preventing loud, disturbing and unnecessary noise detrimental to the public health and welfare." Ibid. (citing State v. Holland, supra, 132 N.J.Super. at 22, 331 A.2d 626).
In the case at bar, Millstone Township enacted Ordinance No. 3-15 to prohibit any loud, unnecessary or unusual noise or any noise that does or is likely to annoy, disturb, injure or endanger the comfort, repose, health, peace or safety of others. The language of the Ordinance is substantially *1129 similar to the language of the ordinances in Powell and Bynum. The Ordinance does not ban all noise. To the contrary, it sets forth specific, objective criteria for a violation to occur: clearly, audible noise at a distance of 100 feet from the building in which it is located is prima facie evidence of a violation of the noise ordinance. The Township enacted the Ordinance for the health and safety of its residents, and the Ordinance is presumed to be valid and reasonable.
Defendant argues that the vague language in the Ordinance should be replaced with objective criteria for enforcement based on sound decibel levels. Relying on Dupres v. City of Newport, 978 F.Supp. 429 (D.R.I.1997), and Parachutes, Inc. v. Lakewood Tp., 121 N.J.Super. 48, 296 A.2d 71 (App.Div.1972), certif. denied, 62 N.J. 331, 301 A.2d 446 (1973), defendant argues that such criteria have been accepted and are based on an objective standard for enforcement. Additionally, defendant notes that forty-six municipalities in New Jersey as well as the New Jersey Noise Control Act regulate noise based on decibel levels.
Defendant's arguments are unpersuasive. In Dupres, the district court held that the decibel provision of a municipal noise ordinance was not constitutionally vague. In satisfying the due process requirements of the Fourteenth Amendment, the court found that the decibel provision set forth specific, objective, and measurable limits on sound for various parts of the city so that individuals would be aware of what conduct was proscribed. Dupres, supra, 978 F.Supp. at 433. In Parachutes, Inc., this court held that a municipality was not barred from regulating noise that was coming from aircraft hovering and cruising at low levels for sport parachuting and that forbidding sounds over fifty decibels during night hours and sixty decibels during the day was not discriminatory. Parachutes, Inc., supra, 121 N.J.Super. at 50-51, 296 A.2d 71.
Even if decibel levels are a "technological" better means for measuring noise levels, the Parachutes, Inc. case was rendered three years prior to Holland. Therefore, the technology for utilizing decibel levels was known for at least three years before Holland was decided. However, our decision in Holland did not require a decibel level based ordinance as a prerequisite for a noise ordinance to pass constitutional muster. Defendant's suggestion that this court disagree with our decisions in Holland, Bynum, Powell and Friedman because more technological advances in measuring noise levels now exist than existed at the time of the Holland decision is without merit.[2] If Millstone Township decides to amend the Ordinance to measure noise based on decibel levels, it is, of course, permitted to do so. It is not this court's role to require the choice of one method over another when as here the present language in the Ordinance is neither vague nor ambiguous and reasonably notifies the public of the conduct it proscribes.

II
Defendant asserts that the Law Division erred by applying the Ordinance *1130 in a subjective manner and not taking into account the reasonableness of defendant's conduct and, thus, the Ordinance is unconstitutional as applied.
The scope of appellate review is limited. The Law Division conducted a trial de novo on the record developed in the municipal court. State v. Avena, 281 N.J.Super. 327, 333, 657 A.2d 883 (App.Div.1995). The Law Division judge was bound to give "due, although not necessarily controlling, regard to the opportunity of a [municipal court judge] to judge the credibility of the witnesses." State v. Johnson, 42 N.J. 146, 157, 199 A.2d 809 (1964). The Law Division judge agreed with the municipal court judge's credibility assessments. Our review is limited to determining whether there is sufficient credible evidence present in the record to support the findings of the Law Division judge, not the municipal court. Id. at 161-62, 199 A.2d 809. Moreover,
[a]lthough the Law Division did not engage in its own credibility determinations separate and apart from the Municipal Court, it described on the record the evidence and testimony presented before the Municipal Court that persuaded it to "accede" to the Municipal Court's credibility determinations. Appellate courts would defer to the trial courts' credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record. Moreover, the rule of deference is more compelling where, as in the present case, two lower courts have entered concurrent judgments on purely factual issues. Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of fact and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error.
[State v. Locurto, 157 N.J. 463, 474, 724 A.2d 234 (1999) (citations omitted).]
Defendant contends that the Ordinance's subjective application to the Inn's activities denied the Inn due process. The Ordinance sets a boundary of 100 feet as prima facie evidence of a sound constituting "noise." In fact, defendant was warned of this requirement at the May 27, 2003 hearing when Judge Gelson spoke with defense counsel:
THE COURT: Okay. Now, and I am sure you have explained, Mr. Mordas [defense counsel], in terms of the music as well is that, with regard to the statute, essentially, it is the 100 foot rule in terms of establishing a prima facie case.

I have no idea as to anything that involves this summons or whatever. But, I am saying for future reference, just in terms of trying to keep some type of a perimeter on what would be reasonable.

MR. MORDAS: Clearly audible within 100 feet.
THE COURT: Exactly sir. I am sure you have discussed that with your client.

MR. MORDAS: Yes, I have, Judge.

[(emphasis added).]
Thus, the transcript reveals that defendant was aware of the statute, its requirements and Judge Gelson's advice that 100 feet should be used as a "perimeter." Further, the transcript reveals that defendant was warned of the repercussions of violating the Ordinance from its own attorney. The admonitions gave clarification to any ambiguity that defendant might have had. Nowhere in the transcript does it indicate that defendant did not understand the meaning or purpose of the Ordinance.
Defendant cites State v. Friedman in support of its position. Friedman involved *1131 the application of a noise ordinance to a dog barking complaint. We explained the notion of reasonableness in the context of noise ordinances as follows:
From the beginning our cases dealing with nuisances based upon noise have held that the matter is a relative one, requiring the weighing of the competing interests and rights of the parties in each case, and that to constitute a nuisance and a disturbance of the peace a noise must be an unreasonable one in the circumstances or causes material annoyance.
[State v. Friedman, supra, 304 N.J.Super. at 7, 697 A.2d 947 (quoting State v. Holland, supra, 132 N.J.Super. at 25, 331 A.2d 626) (emphasis in original).]
Thus, "[such an] ordinance should be interpreted to mean that noise will become actionable only if it is unreasonable or unnecessary in the circumstances." Ibid. (quoting Downs Ford, Inc. v. Dover Tp., supra, 230 N.J.Super. at 628, 554 A.2d 882).
In Friedman, this court held that the trial court's "failure to consider the reasonableness of the Friedmans' [dog owners'] conduct [in letting the dog out in its yard for a few moments before going to work in the morning] in determining whether the ordinance was violated makes the application of the ordinance in this case unconstitutional as to them." Id. at 8, 697 A.2d 947. We determined that "[b]arking is `a natural canine act' and the ordinance, as applied in this case, does not provide a sufficient basis for concluding that the kind of barking that occurred here is prohibited." Id. at 9, 697 A.2d 947 (citing City of Spokane v. Fischer, 110 Wash.2d 541, 754 P.2d 1241, 1242-43 (1988)).
Unlike in Friedman, the Law Division judge considered the reasonableness of defendant's conduct in managing its business and its right to utilize live music in the operation of the business. Judge Kreizman stated:
I find that the Inn has an absolute right to have bands, to have DJs, to have a jukebox, whatever kind of music they have. But I find that the ordinance is constitutional.
I find that the ordinance does prohibit the infringing upon the lives of those people who live within the immediate vicinity. They are people within 100 feet, 200 feet, 500, 600 feet. I find where somebody is unable to listen and watch television in the middle of the winter with his windows closed, I find that the music is too loud.
In weighing the rights of the Inn to conduct their business and the right of the citizens to be free from the nuisance of excessive noise, I find that the equities lie in favor of the citizens.
I find that the judge below and this Court has weighed the reasonableness of the defendant's conduct. I find it unreasonable under the circumstances, that there was an abuse of their right to conduct their business by making excessive noise.
Clearly, the decision to uphold the Ordinance's application to the facts elicited in the testimony was based on a finding that the Ordinance was neither vague nor overbroad. That conclusion was derived after considering the testimony of Weltner, Strickland, and Kowalic, who corroborated the noise emanating from the Inn, Trooper Budrewicz, who testified that he warned defendant about the noise level, and the transcripts of proceedings before Judge Gelson in which the parties initially reached a compromise and defendant was warned about the noise level. Based on *1132 the credible and sufficient evidence in the record, Judge Kreizman's decision finding defendant in violation of Millstone Ordinance No. 3-15 was based on objective criteria after a balancing of the right of the Inn to conduct its business and the right of citizens within 100 to 600 feet from the Inn to listen and watch television in the middle of winter with their windows closed because the music from the band was too loud and infringed on the right of those citizens to be free from excessive noise.
We hold that (1) the Ordinance is neither vague nor overbroad and, therefore, not violative of the Fourteenth Amendment; (2) the plain meaning of the language of the Ordinance is in compliance with the law that we previously set forth in Holland, Bynum, Powell and Friedman; (3) reasonable people are able to understand the proscriptions that are set forth in the Ordinance; and (4) the Ordinance, as applied, used a reasonableness standard in its application. The Law Division judge properly considered the reasonableness of the Inn's conduct when balanced against the objective right of nearby citizens to be free from the nuisance of excessive noise as proscribed by the Ordinance. Defendant's conviction was based on substantial credible evidence in the municipal court record.
Affirmed.
NOTES
[1] In his reply brief, defendant urges this court not to rely on Kowalic's testimony because he had no recollection of any sounds emanating from defendant's premises on either February 1, 2003 or June 20, 2003. However, Kowalic's testimony corroborated the testimony of both Weltner and Strickland.
[2] It was pointed out at oral argument that anti-noise ordinances, based on decimal levels, are impractical and, therefore, difficult to enforce. The issue of whether anti-noise ordinances based on decimal levels are better or more preferred has been the topic of discussions in recent years. Included in the discussions has been their difficulty of practical application for enforcement purposes. See Kristen A. Demers, Note, Recent Development In Constitutional Law, 27 Stetson L.Rev. 1007 (1997); William B. Harvey, III, Symposium on the Regulation of Free Expression in the Public Forum, 14 St. Louis U. Pub.L.Rev. 593 (1995).