**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4666-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MICHAEL OLENOWSKI,

     Defendant-Appellant.

_____

          Argued October 23, 2018 – Decided  November 27, 2018

          Before Judges Fisher, Hoffman and Firko.

          On appeal from Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal Nos. 16-013 and 10-017.

          Michael D'Alessio, Jr. argued the cause for the appellant.

          Paula C. Jordao, Assistant Prosecutor argued the cause for the respondent (Fredric M. Knapp, Morris County Prosecutor, attorney; Erin Smith Wisloff, Supervising Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Michael Olenowski appeals from his conviction, after a trial de novo, for driving while intoxicated (DWI), N.J.S.A. 39:4-50(a), on two separate occasions in 2015. The first charge was defendant's second DWI conviction, and the Law Division judge imposed a two-year license suspension, forty-eight hours in the Intoxicated Driver Resource Center (IDRC) program, and appropriate fines, costs, and penalties. Because the second charge was defendant's third DWI conviction, the Law Division judge imposed a ten-year driver's license suspension, a mandatory 180-day sentence in the Morris County Correctional Facility, and requisite fines, costs, and penalties.

On appeal, defendant contends that the evidence was insufficient to prove him guilty of all charges beyond a reasonable doubt. He attacks the credibility of the State's witnesses, and promotes his own and his Drug Recognition Expert's (DRE) credibility. He presents the following points on appeal:

> POINT I.
>
> DRE EVIDENCE SHOULD NOT HAVE BEEN ADMITTED AS EXPERT OPINION BECAUSE IT IS UNRELIABLE AND NOT "GENERALLY ACCEPTED" AS REQUIRED UNDER FRYE.[1]
>
> A. Standard of Review.

---

[1] Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).

B.    The DEC[2] Protocol.

C.    DRE Evidence is Subject to the <u>Frye</u> Standard of Admissibility and the Requirement for General Acceptance in a Criminal Case.

D.    New Jersey Judicial Opinions Do Not Establish That DRE Testimony Has Gained General Acceptance.

E.    DRE Opinion Is Not Reliable or Generally Accepted in the Scientific Community.

POINT II.

THERE WAS INSUFFICIENT EVIDENCE TO FIND DEFENDANT GUILTY OF DRIVING UNDER THE INFLUENCE.

A.    Standard of Review.

B.    There Was Insufficient Evidence to Convict Defendant on the August 17, 2015 Incident.

C.    There Was Insufficient Evidence to Convict Defendant on the February 13, 2015 Incident.

We affirm, substantially for the reasons set forth in the comprehensive written opinion of Judge James M. DeMarzo. There was sufficient credible evidence in the record to support Judge DeMarzo's finding that defendant was driving while intoxicated on both occasions.

---

2  DEC stands for Drug Recognition and Classification Program.

3                                                                    A-4666-16T1

I.

<u>The February 13, 2015 Incident</u>:

We derive the following facts from the record. At approximately 4:45 p.m. on February 13, 2015, Patrolman Peter Grawehr of the Denville Police Department stopped defendant for failing to wear a seatbelt. Upon approaching defendant's vehicle, Grawehr smelled the "odor of heavy alcohol." He administered a series of Standardized Field Sobriety Tests, beginning with the Horizontal Gaze Nystagmus Test (HGN Test). Grawehr next attempted to conduct the walk-and-turn test, after explaining and demonstrating the test for defendant. During this time, defendant was "swaying side-to-side," and had to "stop several times to maintain his balance." After three reinstructions, defendant complied.

Grawehr attempted to conduct the One-Leg Stand Test but defendant repeatedly lost his balance and "explained to [Grawehr] that he could not count past ten one thousand," but "could count to 31,000 by counting to ten one thousand three times." Defendant "fumbled Patrolman Grawehr's request for registration by producing a rental agreement," and admitted to consuming one alcoholic beverage. Based on all of his observations, Grawehr believed defendant was under the influence and unable to safely operate a motor vehicle.

  A-4666-16T1

He was placed under arrest and transported to the Denville police station, where Grawehr administered an Alcotest, which revealed a blood alcohol content of 0.04%. The officer discovered a "small pink plastic [z]iploc baggie[] with some unknown residue inside." After questioning defendant about the contents of the baggie, he asserted his Fifth Amendment privilege against self-incrimination. Additionally, Grawehr observed defendant exhibiting erratic behavior and acting belligerently.

Since Grawehr felt "the level of impairment didn't match up with the alcohol reading," he contacted Sergeant Pat McNichol, a certified DRE, who performed a Drug Influence Evaluation (DIE) on defendant. He had difficulty with balance, and exhibited a "circular sway." McNichol also attempted to conduct the One-Leg Stand Test, however, when defendant "swayed while balancing and used his arms for balance," the officer stopped the test because of safety concerns. McNichol concluded that defendant was under the influence of a central nervous system (CNS) depressant, a sympathetic nervous system (SNS) stimulant, and alcohol.

The August 17, 2015 Incident:

On August 17, 2015, defendant drove his GMC Yukon off a road and struck a telephone pole in Denville. At approximately 4:48 a.m., Patrolman

5

David Longo investigated the accident. He approached defendant, who had already exited his vehicle, and noted he was "having trouble keeping his balance[,]" "his speech was slurred[,]" and he had "a lot of saliva" on his face and chin. After being questioned by Officer Longo about medications, defendant responded that he was released from the hospital the night before and prescribed Lipitor, Ambien, and another medication, but could not recall the name.[3] Defendant also stated that he injured his foot a year prior to the accident, which affected his balance and ambulation. Longo administered a series of Standard Field Sobriety Tests, including the HGN Test, walk-and-turn test, and One-Leg Stand Test. Defendant had to be instructed "multiple times" before complying with instructions. He had a "blank stare," his speech was slurred, and he was swaying.

Defendant was arrested for DWI. After being transported to the police station, Longo administered an Alcotest, which showed a blood alcohol content of 0.00%. No blood was drawn, and defendant refused to provide a urine sample. Based upon defendant failing the field sobriety tests, finger-to-nose test, his slow coordination, rapid breath, a pale complexion, and bloodshot eyes, Longo contacted Detective Dennis Subrizi to perform a DRE on defendant.

---

[3] The record reflects that he was also prescribed Nexium and a beta blocker.

A-4666-16T1

After conducting a DRE, Subrizi confirmed these symptoms. He also found defendant exhibited mood swings, as he "went from being happy to crying in all of a matter of a couple of seconds," which he opined is "a huge indicator for somebody to be under [the influence] of liquor and/or drugs." He concluded that defendant was under the influence of a CNS stimulant and depressant.

Dr. Robert Pandina, defendant's DRE expert, testified that the DRE protocol was flawed here because no toxicology samples were collected and same were necessary to identify the drug and quantity consumed by defendant.

## II.

Our standard of review is limited following a trial de novo in the Law Division, conducted on the record developed in the municipal court. State v. Clarksburg Inn, 375 N.J. Super. 624, 639 (App. Div. 2005); see also R. 3:23-8(a)(2). In such an appeal, we "consider only the action of the Law Division and not that of the municipal court." State v. Oliveri, 336 N.J. Super. 244, 251 (App. Div. 2001) (citation omitted). The Law Division judge must make independent findings of fact and conclusions of law based upon the evidentiary record of the municipal court judge to assess the witnesses' credibility. State v. Johnson, 42 N.J. 146, 157 (1964) (citations omitted). We focus our review on "whether there is 'sufficient credible evidence . . . in the record' to support the

A-4666-16T1

trial court's findings." State v. Robertson, 228 N.J. 138, 148 (2017) (alteration in original) (quoting Johnson, 42 N.J. at 162). On a legal determination, in contrast, our review is plenary. See State v. Kuropchak, 221 N.J. 368, 383 (2015).

We will reverse only after being "thoroughly satisfied that the finding is clearly a mistaken one and so plainly unwarranted that the interests of justice demand intervention and correction." Johnson, 42 N.J. at 162. "We do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." State v. Barone, 147 N.J. 599, 615 (1997). Because neither the appellate court nor the Law Division judge is in a good position to judge credibility, the municipal court's credibility findings are given deference. See State v. Locurto, 157 N.J. 463, 470-71 (1999). The rule of deference is more compelling where, as here, both judges made concurrent findings. Id. at 474. "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid. (citation omitted). Therefore, appellate review of the factual and credibility findings of the municipal court and the Law Division "is exceedingly narrow."

State v. Reece, 222 N.J. 154, 167 (2015) (quoting State v. Locurto, 157 N.J. at 470).

N.J.S.A. 39:4-50(a) penalizes "operat[ing] a motor vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug, or operat[ing] a motor vehicle with a blood alcohol concentration of 0.08% or more by weight of alcohol in the defendant's blood . . . ." Defendant argues that the State failed to prove him guilty of DWI beyond a reasonable doubt because his BAC for both incidents fell below the 0.08% limit, and DRE evidence is unreliable without laboratory testing being performed.

III.

We first address defendant's argument raised in Point I that the Law Division judge erred in concluding that DRE evidence was admissible here under the Frye standard. We disagree. N.J.R.E. 702 provides for the admission of expert testimony:

> If scientific, technical, or other specialized knowledge
> will assert the trier of fact to understand the evidence
> or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or
> education may testify thereto in the form of an opinion
> or otherwise.

Expert testimony that is scientific in nature is only admissible if the method used by the expert has "a sufficient scientific basis to produce uniform

and reasonably reliable results so as to contribute materially to the ascertainment of the truth." State v. Kelly, 97 N.J. 178, 210 (1984) (citations omitted). In State v. Bealor, 187 N.J. 574, 592-93 (2006), the Court noted that: "As part of their required course of study, police officers must be trained in detecting drug-induced intoxication." When dealing with scientific evidence, this State has adopted the Frye standard of admissibility as set forth in State v. Harvey, 151 N.J. 117, 169-70 (1997). A proponent of a newly-devised scientific technology can prove its general acceptance in three ways:

> (1) by expert testimony as to the general acceptance, among those in the profession, of the premises on which the proffered expert witness based his or her analysis;
>
> (2) by authoritative scientific and legal writings indicating that the scientific community accepts the premises underlying the proffered testimony; and
>
> (3) by judicial opinions that indicate the expert's premises have gained general acceptance.
>
> [Harvey, 151 N.J. at 170 (quoting Kelly, 97 N.J. at 210)].

The judge found DRE evidence "qualifies as scientific evidence subject to judicial gatekeeping," and stated:

> [B]ecause of the scientific background of many of the steps of the protocol, DRE evidence, taken as a whole, qualifies as being scientific enough to trigger a ruling under the Frye-Harvey standard. The [c]ourt agrees

10

with [d]efendant that DRE evidence is indeed scientific.

As to the reliability of DRE evidence here, Judge DeMarzo found:

> Nevertheless, New Jersey's continued reliance on DRE evidence indicates the willingness that it still finds it to be generally acceptable and reliable in the scientific community. As previously stated, a scientific method can be disputed, but the evidence it procures remains admissible. Moreover, Dr. Pandina's disagreement of such acceptance cannot in itself overturn the reliability of certain scientific subject-matter because its acceptability does not turn on a unanimous or universal agreement. For these reasons, DRE evidence satisfies the three requirements outlined in Harvey.
>
> [Internal citations omitted.]

These facts were significant enough to support a conclusion that defendant's intoxication "so affected [his] judgment or control as to make it improper for him to drive on the highways." Johnson, 42 N.J. at 165. Put another way, defendant was under the influence because he suffered a "substantial deterioration or diminution of the mental faculties or physical capabilities of a person . . . ." State v. Tamburro, 68 N.J. 414, 421 (1975). A defendant's demeanor, physical appearance, slurred speech, and bloodshot eyes, together with poor performance on field sobriety tests, are sufficient to sustain a DWI conviction. State v. Bealor, 187 N.J. at 588-89. Here, Officer Grawehr and Longo's observations of defendant, combined with his inability to

11                                                                    A-4666-16T1

satisfactorily perform psycho-physical tests, were more than sufficient to sustain his DWI convictions.

We also reject defendant's argument that the Law Division judge improvidently relied upon DRE evidence. Further, we are satisfied that the record contains substantial credible evidence to support the findings by the Law Division judge that defendant was driving while under the influence of hallucinogenic and habit-producing drugs, without regard to the Alcotest readings. Contrary to defendant's contentions, there was ample evidence to support his convictions based on his physical condition at the time of the stops. As to the February 13, 2015 incident, DRE expert, McNichol, testified that defendant "possessed slow coordination, unclear speech, stale breath, a pale face, bloodshot eyes, reddened nasal area, and a white paste on his tongue."

As to the August 17, 2015 incident, based upon DRE expert Subrizi's testimony, the judge found "an abundance of evidence" to find defendant guilty beyond a reasonable doubt based upon "[h]is physical appearance, cognitive expressions, and multiple failed sobriety tests . . . ." The observations and opinions of McNichol and Subrizi were sufficient to allow Judge DeMarzo to determine beyond a reasonable doubt that defendant was guilty of driving while intoxicated on both occasions. Accordingly, we find no basis for reversal here.

A-4666-16T1

Defendant's other arguments do not warrant further discussion. R. 2:11-3(e)(1)(E).

We conclude that Judge DeMarzo's factual findings are fully supported by the record, and in light of these facts, his legal conclusions are unassailable for the reasons expressed in his well-reasoned opinion.

Affirm.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13