**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3712-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DANIEL TADROS,

    Defendant-Appellant.

_____

Submitted December 5, 2024 – Decided December 13, 2024

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Municipal Appeal No. MA-21-2022.

The O'Mara Law Firm, attorneys for appellant (Peter M. O'Mara, on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Ryan M. Farrell, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Daniel Tadros appeals from his conviction for driving while intoxicated, N.J.S.A. 39:4-50, after a trial de novo in the Law Division. We affirm.

We summarize the facts developed during the municipal court trial conducted on September 28, and November 9, 2022. East Brunswick Police Officers Christian Rodriguez and Robert Theoret testified for the State.

On April 14, 2018, at approximately 1:30 a.m., Officer Rodriguez was on patrol in a marked police unit when he was dispatched to a restaurant on Route 18 in East Brunswick to investigate a report of man sleeping in a black pick-up truck at the drive-through. When he arrived, he saw a vehicle matching that description turn onto Route 18. The vehicle took a "wide turn from the [restaurant] exit and . . . fail[ed] to maintain [its] lane, traveling in between the center and the far[-]right lane several times crossing over the lines." Officer Rodriguez activated his overhead lights to conduct a motor vehicle stop, but the vehicle did not stop. He then activated his siren, and the vehicle stopped on an exit ramp. It took "approximately a full minute" to stop the vehicle.

When Officer Rodriguez approached the vehicle he observed the driver, later identified as defendant, was "[s]low and lethargic in [retrieving] his documents. He was also lethargic with his hand movements and fumbling the

2

documents.  His eyes were red, watery[,] and droopy."  Officer Rodriguez smelled an odor of alcohol emanating from the vehicle.  Defendant said he was coming from a friend's house.  He initially denied drinking but later said he drank two bottles of beer.

Officer Rodriguez asked defendant to exit the vehicle and observed defendant stumbling as he did so.  The officer then conducted standardized field sobriety tests.  He asked defendant to do the "walk-and-turn test," but defendant could not balance himself during the instructions, began too soon, stopped walking before the test concluded, missed the heel-to-toe turn, stepped out of line, and used his arms for balance.  Defendant was then asked to stand on one leg and count to thirty.  Officer Rodriguez stopped the test for defendant's safety because he could not follow the instructions.  During the tests, Officer Rodriguez observed defendant swaying, placing his hands on his knees, moving in circles, staggering, grasping for support, and balancing himself against the patrol car.  Defendant was "rambling, . . . appeared to be incoherent, his language was slurred, . . . stuttering and sometimes . . . whining . . . ."

Officer Rodriguez concluded defendant was impaired, placed him under arrest, and transported him to the police station.  In the patrol car, defendant continued to whine, and Officer Rodriguez detected the odor of alcohol in the

3

car. The State introduced three mobile video recorder (MVR) segments at trial that showed defendant's interactions with Officer Rodriguez.[1]

Officer Theoret administered an Alcotest on defendant. Before starting the test, he observed defendant for at least twenty minutes from 2:12 a.m. to 2:32 a.m., during which defendant did not belch, cough, regurgitate, or place anything in his mouth. Officer Theoret then moved defendant into the room where the Alcotest was administered. He observed defendant during the entire period between 2:12 a.m. and 2:43 a.m. when the first breath test was administered. Defendant's blood alcohol content (BAC) was determined to be .14.[2] The Alcotest uses two methods to measure a breath sample: electric chemical oxidation sensing (EC) and infrared sensing (IR). On the first test, his readings were .140 for both EC and IR. On the second test, his readings were EC .153 and IR .151.

Defendant called former New Jersey State Police Trooper Kevin Flanagan as an expert on the Alcotest machine. He testified Officer Theoret did not do "anything wrong" and administered the Alcotest in accordance with State v.

---

[1] The MVR evidence is not included in the record on appeal.

[2] The Alcohol Influence Report (AIR) and the Alcotest calculation worksheet are not included in the record on appeal.

<u>Chun</u>, 194 N.J. 54 (2008). Flanagan testified Officer Theoret "took the numbers of the breath test results, plugged them into the [Alcotest] calculator and got the result. Breath samples [were] within acceptable tolerance." Officer Theoret did "what is supposed to be done [under <u>Chun</u> and its progeny] when the results are obtained from the Alcotest" and it was "an acceptable use of those procedures."

Flanagan testified the "instrument has the capability of reporting out to four decimal places, but the State chose only to report three decimal places." The officer correctly entered EC results of .140 for the first reading and .153 for the second. According to the calculation worksheet, "the upper tolerance [was] a .1533. And the lower tolerance [was] a .1386." Flanagan agreed the readings of .140 and .153 fell within the acceptable tolerance. He opined, however, that if the State elected to use readings with four decimal places, it is possible the reading of .153 was not within acceptable tolerance because it could have been .1534 to .1539. Without knowing the readings out to four decimal places, Flanagan was not able to determine if the readings were outside acceptable tolerance.

Flanagan also opined there was a possibility the officers did not conduct an appropriate twenty-minute observation period because the first breath test was conducted at 2:43 a.m., which was thirty minutes after the observation

A-3712-22

period began. He did not view the video of the observation period and administration of the Alcotest. He conceded that if the officers testified they continuously observed defendant for the entire thirty-minute period, it would "[a]bsolutely" be an acceptable observation.

The municipal court judge found Officer Rodriguez testified credibly in "a clear, consistent manner." Based on the officer's testimony and her own review of the video evidence, the judge found defendant failed the walk-and-turn field sobriety test. She found there was sufficient light and "the grade of the surface did not appear to be an actual issue watching . . . defendant perform the test." The judge also found the leg raise test was properly stopped before completion for defendant's safety. She noted, based on the video, "there [was] significant swaying, [and] there [was] touching of the patrol car." Considering all the evidence, the judge found defendant "guilty beyond a reasonable doubt in the observation case."

The judge also found defendant guilty based on the Alcotest. She found Officer Theoret credible, and noted his testimony was "very clear" that defendant was observed for at least twenty minutes before the Alcotest began and the observation continued through the end of the procedure. The judge also found the Alcotest was administered properly and in accordance with Chun. She

did not "find anything that would lead [the court] to not admit the result and to not find that . . . defendant is guilty beyond a reasonable doubt on the Alcotest prong, as well."

Defendant appealed to the Law Division. On June 2, 2023, the court conducted a trial de novo. On June 12, the court entered an order finding defendant guilty of driving while intoxicated supported by a written opinion. The court found Officer Rodriguez's testimony "inherently credible" and noted his testimony was corroborated by the MVR video. It found Officer "Theoret's testimony likewise credible." The court found "Flanagan is a different story" because "[h]e was not at the scene of the arrest or in police headquarters when they tested [defendant's] [BAC]." It rejected Flanagan's "factual assumptions that differ[ed] from those reported by the officers . . . or [were] apparent to [the court] from the video."

The court found defendant guilty of driving while intoxicated beyond a reasonable doubt based on observations at the scene. It found "multiple facts demonstrate[d] drunkenness" including that defendant: "made a wide turn exiting [the restaurant] and had trouble maintaining his lane"; "reeked of alcohol"; was "slow and lethargic, and . . . had trouble retrieving his driving credentials"; had "droopy, red, and watery" eyes; and "denied drinking at first

7

and then changed his story later."  The court also found defendant:  "stepped off the line during the walk-and-turn test, flailed his arms to maintain his balance, and leaned on the truck after almost falling"; "could not maintain his balance during the one-leg stand"; "was pacing in circles at times and staggering"; and "rambled when he spoke, . . . slurred his speech, stuttered, and whined."  Having found defendant guilty based on observations at the scene, the court did not address his arguments regarding the Alcotest.

On July 14, the court sentenced defendant to 180 days in jail for a third conviction for driving while intoxicated, ninety days of which may be served in an inpatient treatment facility.  The court also imposed a ten-year license suspension and other appropriate penalties, fines, and costs.  The court stayed the custodial portion of defendant's sentence pending appeal.

On appeal, defendant raises the following points for our consideration.

> POINT I
>
> THERE WAS NOT SUFFICIENT EVIDENCE TO PROVE [DEFENDANT] GUILTY BEYOND A REASONABLE DOUBT BASED ON THE OBSERVATIONS.
>
> POINT II
>
> THE ALCOTEST RESULTS IN THIS MATTER SHOULD HAVE BEEN RULED INADMISSIBLE.

A-3712-22

When the Law Division conducts a trial de novo on a record previously developed in the municipal court, our review is limited. State v. Clarksburg Inn, 375 N.J. Super. 624, 639 (App. Div. 2005). The Law Division is "bound to give 'due, although not necessarily controlling, regard to the opportunity of a [municipal court judge] to judge the credibility of the witnesses.'" Ibid. (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 157 (1964)). We determine whether there is sufficient credible evidence present in the record to support the Law Division's conclusions. Ibid.

Moreover, when the Law Division concurs with the municipal court, the two-court rule applies. "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." State v. Locurto, 157 N.J. 463, 474 (1999) (citing Midler v. Heinowitz, 10 N.J. 123, 128-29 (1952)).

N.J.S.A. 39:4-50(a) prohibits the operation of a motor vehicle while "under the influence of intoxicating liquor . . . ." Someone is "under the influence" of alcohol when they experience "a substantial deterioration or diminution of the mental faculties or physical capabilities . . . due to intoxicating liquor . . . ." State v. Tamburro, 68 N.J. 414, 421 (1975).

9                                                    A-3712-22

Observations of physical symptoms by police can support a finding of intoxication. See, e.g., State v. Frederico, 414 N.J. Super 321, 327 (App. Div. 2010) (slurred language; watery eyes; smell of alcohol); State v. Robertson, 438 N.J. Super. 47, 55 (App. Div. 2014) (inability to follow instructions; losing balance); State v. Cryan, 363 N.J. Super. 442, 456 (App. Div. 2003) (bloodshot eyes; strong odor of alcohol); State v. Slinger, 281 N.J. Super. 538, 543 (App. Div. 1995) (erratic driving; demeanor; speech).

In addition, the results of field sobriety tests conducted by trained police officers can be used as evidence of intoxication. See, e.g., State v. Morton, 39 N.J. 512, 515 (1963) ("[P]hysical reactions to [sobriety] tests are on the same plane as other common factual indica that a person is under the influence of intoxicating liquor . . . ."); State v. Higgins, 132 N.J. Super. 67, 71 (App. Div. 1975) (defendant struggling to perform walk-and-turn test).

We affirm substantially for the reasons set forth in the court's June 12, 2023 written opinion. The court, as did the municipal court judge, found the State's witnesses credible. There is no reason for us to disturb the court's credibility findings. The court then determined, after de novo review of the record, the State proved beyond a reasonable doubt defendant was guilty of driving while intoxicated based on observations of physical symptoms and the

10

field sobriety tests. We are satisfied there is sufficient credible evidence in the record to support the court's finding of guilt beyond a reasonable doubt. We add the following comments.

We are not persuaded by defendant's contention that the municipal court judge erred by finding the Alcotest results admissible. The results of an Alcotest are admissible if: "(1) the device was in working order and had been inspected according to procedure; (2) the operator was certified; and (3) the test was administered according to official procedure." Chun, 194 N.J. at 134 (citing Romano v. Kimmelman, 96 N.J. 66, 81 (1984)).

The Alcotest operator is required to wait at least twenty minutes before collecting a breath sample "to avoid overestimated readings due to residual effects of mouth alcohol." Id. at 79. During the twenty-minute window, the operator must observe the subject "to ensure that no alcohol has entered the person's mouth while [they are] awaiting the start of the testing sequence." Ibid.

Here, there was substantial credible evidence in the record that Officer Theoret observed defendant continuously for at least twenty minutes before administering the Alcotest. There is no basis to conclude the municipal court judge erred by finding the twenty-minute observation period requirement was satisfied.

11

Defendant's contention that the Alcotest readings may have been outside the accepted tolerance is not convincing. As recognized by Chun, the Alcotest subject must provide two breath samples, resulting in four BAC readings to three decimal places. Id. at 81, 83. The lowest of the four readings is then reported on the AIR and truncated to two decimal places. Id. at 83. To be admissible at trial, "the [Alcotest must] be programmed to fix the tolerance range to be plus or minus .005 percent BAC from the mean or plus or minus five percent of the mean, whichever is greater, in order to ensure [it is] scientifically accurate . . . ." Id. at 116.

Officer Theoret correctly entered defendant's readings into the Alcotest calculator and the machine generated a report that indicated the readings were within acceptable tolerance. Flanagan conceded the officer administered the test properly and the readings were within the acceptable tolerance as indicated by the Alcotest calculator. The municipal court judge correctly determined the Alcotest results were admissible.

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed. The stay entered by the Law Division is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-3712-22