823 A.2d 883 (2003)
360 N.J. Super. 538
STATE of New Jersey, Plaintiff-Respondent,
v.
Sadegh KASHI, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued April 30, 2003.
Decided June 5, 2003.
*884 Timothy G. Boney, argued the cause for appellant.
Simon Louis Rosenbach, Assistant Middlesex County Prosecutor, argued the cause for respondent (Bruce J. Kaplan, Prosecutor, attorney; Mr. Rosenbach, of counsel and on the brief).
Before Judges KING, WEFING and LISA.
The opinion of the court was delivered by WEFING, J.A.D.
Defendant received summonses for reckless driving, N.J.S.A. 39:4-96; driving while under the influence, N.J.S.A. 39:4-50; and an amended charge of failing to produce proof of insurance, N.J.S.A. 39:6B-2. He appeared in municipal court and was found guilty of all three charges. *885 He appealed to Superior Court, Law Division, where he challenged the first two convictions. After a trial de novo, he was acquitted of reckless driving but again found guilty of driving while under the influence. This was defendant's second such conviction and the court suspended defendant's license for two years, sentenced him to perform thirty days of community service and forty-eight hours in the IDRC; appropriate fines and penalties were also assessed. He appeals and we affirm.
Shortly after 3:00 a.m. on March 24, 2001, Tomasso Grasso was driving southbound on the New Jersey Turnpike when his car, a 1995 BMW, began to overheat. Grasso steered his car from the left lane in which he had been driving to the shoulder. Grasso turned off the engine and got out of the vehicle. Defendant was also driving southbound on the Turnpike; he drove from the lane of travel onto the shoulder and into Grasso's car, which sustained more than $30,000 in damages. Grasso said the two men spoke briefly but he did not understand what defendant said. Defendant returned to his car and sat.
Police responded to the accident scene, including State Trooper Daniel Strassheim. Trooper Strassheim detected a strong odor of alcohol on defendant's breath. Defendant told Trooper Strassheim he may have fallen asleep. Defendant said he had been to dinner in New York City and had consumed several glasses of wine.
Trooper Strassheim performed several physical tests at the roadside, including the horizontal gaze nystagmus test, a balance test, and a test of defendant's ability to walk heel to toe.[1] Defendant's performance was unsatisfactory on each. The trooper then advised defendant he was under arrest for driving while under the influence of alcohol and advised him of his Miranda rights, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Trooper Strassheim then took defendant to the barracks, where he administered two Breathalyzer tests, the results of which were .15 and .14.
Three witnesses testified at the municipal court trial: Mr. Grasso and Trooper Strassheim for the prosecution, Dr. Richard Saferstein for the defense. Trooper Strassheim testified in detail as to his operation of the Breathalyzer machine, a Model 900. He said he called the barracks from the accident scene to ask that the machine be turned on, so that it would be ready when they arrived but admitted he did not know when the machine was turned on. When they arrived at the barracks, Trooper Strassheim turned off the machine and turned it on again to go through the necessary steps before administering the test.
These steps are set forth at N.J.A.C. 13:51 App. There are three phases: preparation phase, purge phase and analysis phase. After completing all the steps in the preparation phase, the operator must complete the four steps in the purge phase. The operator must first turn the control knob to the "Take" position, flush the machine and turn the control knob to the "Analyze" position. The operator must then determine that the machine is purged of any residual alcohol. Proper procedure calls for the operator to note when the red empty signal comes on, and then wait ninety seconds and observe the light turned on. The operator then proceeds with the balance of the test. Proper procedure calls for a similar ninety-second wait after the red signal comes on when *886 administering the second test. Trooper Strassheim, however, clearly testified that he never utilizes the red light signal during the purge phase, either before the first test or the second test, but determines himself when the sample has been released from the chamber and then waits an additional minute and one-half.
Trooper Strassheim also produced the certifications for the testing that was performed on this particular Breathalyzer to assure its accuracy. N.J.A.C. 13:51-4.3. The machine was tested on March 14, 2001, ten days before the incident in question and found to be in proper working order. It was tested again on May 17, 2001, nearly two months after the incident at which time it was determined that the thermometer was not working properly; the machine was taken out of service to be repaired.
Defendant's expert, Dr. Saferstein, had prepared a report that the subsequent problem with the machine's thermometer made it impossible to determine that it was working properly when defendant was tested and he testified to that effect. Dr. Saferstein was present in the courtroom during the testimony of Trooper Strassheim. Based on that testimony, Dr. Saferstein also expressed the opinion that the trooper had not administered the tests correctly and thus the results obtained were scientifically unreliable.
At the conclusion of the municipal court trial, the municipal court judge gave an oral opinion in which he first found that the "observations" made by Trooper Strassheim and Mr. Grasso were not sufficient in themselves to establish beyond a reasonable doubt that defendant was driving while intoxicated. He then analyzed the balance of the testimony offered by Trooper Strassheim and Dr. Saferstein and concluded that the Breathalyzer tests were properly administered and found defendant guilty of driving while intoxicated. He also concluded that defendant had been guilty of reckless driving.
On defendant's appeal to Superior Court, Law Division, a somewhat different result obtained. The Superior Court judge, after reviewing the transcript of the municipal court trial, concluded that the evidence established that defendant was guilty of driving while intoxicated, not only on the basis of the Breathalyzer readings but also on the basis of the physical observations and the roadside tests performed by Trooper Strassheim.
Defendant raises five arguments on appeal. He first maintains that he could not be found guilty of driving while intoxicated based upon the results of the Breathalyzer test because of the uncertainty whether the machine was operating properly on the date in question and because the testing procedure which was utilized was incorrect. We reject the first portion of the argument and agree with the second.
Dr. Saferstein candidly admitted during his cross-examination that he could do no more than speculate that the thermometer was not functioning correctly on March 24, 2001. Trooper Strassheim testified that he monitored the temperature of the machine during the test procedure. Speculation is not a sufficient basis to conclude that the test machine was not working properly on March 24, 2001.
We agree, however, that the trooper's testimony clearly establishes that he did not follow the correct procedures during the actual administration of the tests themselves. His failure to utilize the red signal before counting ninety seconds makes it impossible to determine that the machine was indeed purged of residual alcohol, the presence of which could taint the results obtained.
*887 A conviction of driving while intoxicated requires proof beyond a reasonable doubt. State v. DiSomma, 262 N.J.Super. 375, 380, 621 A. 2d 55 (App.Div.1993). Such a substantial facial flaw in the test methodology, in our judgment, precludes a determination beyond a reasonable doubt that the two test results obtained were scientifically accurate.
Defendant maintains that the lack of reliability of the Breathalyzer tests, combined with his position that the Law Division judge could not find him guilty based upon the trooper's observations and the roadside tests after the municipal court judge rejected that position, must lead to his acquittal. According to defendant, he was acquitted in the municipal court based upon the physical coordination tests and could not thereafter be found guilty on those same tests in Superior Court. He argues that the action of the Superior Court judge in finding him guilty on that basis was a violation of double jeopardy. State v. Widmaier, 157 N.J. 475, 724 A.2d 241 (1999).
The situation presented is somewhat analogous to that which we considered in State v. Sisti, 209 N.J.Super. 148, 506 A.2d 1307 (App.Div.1986). Defendant in that case was charged with driving while intoxicated. Two breathalyzer tests produced results of .13. There was also evidence that defendant smelled of alcohol, his speech was slurred, and as to his walk and mannerisms. Id. at 150, 506 A.2d 1307. The municipal court judge found defendant guilty based upon the Breathalyzer readings alone, finding it unnecessary to make any further findings. Ibid. When defendant appealed to the Law Division, the Law Division judge found defendant guilty both on the basis of the Breathalyzer readings and the observations of the arresting officers. Id. at 151, 506 A.2d 1307. We found no impropriety in the Law Division judge making his own findings about defendant's physical state when the municipal court judge had failed to do so. Ibid.
We disagree with defendant's position that his right not to be placed in jeopardy twice for the same offense was implicated. Defendant misapprehends the offense of driving while intoxicated. There is one such offense, created by N.J.S.A. 39:4-50, guilt of which is proved through either of two alternative evidential methods: proof of a defendant's physical condition or proof of a defendant's blood alcohol level. A failure of proof on one aspect is not, by any measure, an acquittal. Defendant was not "acquitted" of anything in the municipal court. The municipal court judge who presided over the trial made his own assessment of the evidence and found defendant guilty through one evidential avenue.
The statute at one point made a distinction between driving while intoxicated and driving while impaired. In that context, a driver who was acquitted in municipal court of driving while intoxicated under subsection (a) of the then-statute but convicted of driving while impaired under subsection (b) could not, on a trial de novo, be found guilty of driving while intoxicated. State v. Lanish, 103 N.J.Super. 441, 444, 247 A.2d 492 (App.Div.1968). That analysis has no bearing under the current statute.
Nothing precluded the Superior Court judge from making his own assessment of the sufficiency of the evidence contained within the record. That is, indeed, the essence of a trial de novo, which is based on the record in the municipal court. Such a proceeding is not an appellate one; the Superior Court judge does not affirm or reverse what occurred in the municipal court. Rather, the Superior Court judge reviews the transcript and makes an independent determination of the sufficiency of the evidence presented, *888 giving appropriate deference to any credibility assessments that the municipal court judge may have made. Here, the municipal court judge made no reference to the credibility, or lack thereof, of the witnesses who testified before him.
"A trial de novo by definition requires the trier to make his own findings of fact." State v. Ross, 189 N.J.Super. 67, 75, 458 A.2d 1299 (App.Div.1983). We can perceive no reason in logic or in policy why the Superior Court judge could not review the transcript, with its detailed recitation of defendant's inability to perform satisfactorily on the physical tests administered, and conclude that those established, beyond a reasonable doubt, that defendant was indeed intoxicated when he was driving down the Turnpike in the early morning hours. There was nothing in the record which in any way challenged the accuracy of the trooper's descriptions. We implicitly recognized the propriety of such a result in State v. Oliveri, 336 N.J.Super. 244, 251, 764 A.2d 489 (App. Div.2001).
Defendant raises three other arguments. We dispose of them briefly. In the municipal court trial, after the trooper testified about what occurred that evening, both at the roadside and at the barracks, the prosecutor indicated he was resting. The municipal court judge then asked defense counsel if there was any cross-examination and she indicated there was none. The judge then turned to the prosecutor and inquired whether he had "any certifications on the machine." Defense counsel immediately objected. The judge then permitted the State to reopen its direct examination to present the necessary proof.
Defendant complains that the actions of the municipal court judge constituted improper assistance to the State in its prosecution and were unfair. A trial, however, is not a game and confidence in our judicial system requires that a result not turn upon a momentary lapse of attention on either side. Defendant was given the right to fully cross-examine the trooper on all aspects of his testimony once the State completed its presentation. There was no error.
Finally, defendant asserts that he was denied the effective assistance of counsel and that the evidence of the roadside tests was insufficient to find him guilty. We do not consider either argument to contain sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).
Defendant's conviction is affirmed.
NOTES
[1] Defendant does not challenge the methodology or the reliability of the horizontal gaze nystagmus test. State v. Doriguzzi, 334 N.J.Super. 530, 760 A.2d 336 (App.Div.2000).