**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0971-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

OMAR GASSAMA,

    Defendant-Appellant.

_____

Submitted May 28, 2019 – Decided June 10, 2019

Before Judges Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Municipal Appeal No. 18-17.

Lukach Law, PC, attorneys for appellant (Stephen M. Lukach, III, of counsel and on the brief).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (John Joseph Santoliquido, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Omar Gassama was arrested in Hammonton and charged with driving while intoxicated (DWI), N.J.S.A. 39:4-50; refusal to submit to a chemical breath test (refusal), N.J.S.A. 39:4-50.4a; refusal to consent to the taking of breath samples, N.J.S.A. 39:4-50.2; unsafe lane change, N.J.S.A. 39:4-88(b); reckless driving, N.J.S.A. 39:4-96; and using a handheld cell phone while driving, N.J.S.A. 39:4-97.3. At the conclusion of the trial, the municipal court issued a written decision, finding defendant guilty of all charges, with one exception.[1] Following a trial de novo in the Law Division, the judge issued a written decision, finding the State proved all of the remaining charges beyond a reasonable doubt, except reckless driving.[2]

Defendant now appeals, raising four of the five points he raised before the Law Division judge:[3]

---

[1] The municipal court found defendant not guilty of refusal to consent to the taking of breath samples because the penalty provisions for that charge are included in the refusal statute.

[2] The Law Division judge determined that, although defendant was DWI, he did not "dr[i]ve his vehicle heedlessly, in willful or wanton disregard of the rights or safety of others, in a manner so as to endanger, or likely to endanger, a person or property." See N.J.S.A. 39:4-96.

[3] Defendant's fifth point before the Law Division judge pertained to his reckless driving conviction.

A-0971-18T4

POINT I

THE LAW DIVISION ERRED IN HOLDING THERE WAS SUFFICIENT REASONABLE SUSPICION TO PERFORM PSYCHOPHYSICAL TESTS AT THE SCENE PURSUANT TO <u>STATE V. BERNOKEITS</u>[, 423 N.J. SUPER. 365 (APP. DIV. 2011)]. THUS, THIS COURT SHOULD REVERSE AND SUPPRESS ALL EVIDENCE SEIZED OR OBSERVED AS FRUIT OF THE POISONOUS TREE AND ACQUIT DEFENDANT OF REFUSAL AND DWI.

POINT II

THERE IS REASONABLE DOUBT AS TO THE INTOXICATION ELEMENT OF DWI. THUS, THE LAW DIVISION RULING SHOULD BE REVERSED AND DEFENDANT ACQUITTED OF DWI.

POINT III

UNDER THE UNIQUE CIRCUMSTANCES OF THIS CASE, THE STATE FAILED TO PROVE REFUSAL BEYOND A REASONABLE DOUBT. [DEFENDANT] HAD DEMONSTRATED A VALI[D] CONFUSION DEFENSE. EVEN IF CONFUSION PROPERLY [WERE] NOT FOUND, THE "NO" RESULTS OF POLICE QUESTIONING WHILE DEFENDANT WAS IN CUSTODY, VIOLATES DEFENDANT'S FIFTH AMENDMENT RIGHTS, AND/OR THE NEW JERSEY COMMON LAW PRIVILEGE AGAINST SELF-INCRIMINATION.

POINT IV

THE LAW DIVISION ERRED IN CONVICTING DEFENDANT OF [USING A HANDHELD CELL PHONE WHILE DRIVING,] N.J.S.[A.] 39:4-97.3,

GIVEN LACK OF PROOF BEYOND A REASONABLE DOUBT.

We reject these arguments and affirm.

I.

We derive the salient facts from the testimony adduced at the municipal court trial, during which the arresting trooper testified on behalf of the State and defendant testified in his own behalf. The State also moved into evidence several documents, and the video of the incident captured by the police car's mobile recorder.

On March 5, 2017, at approximately 8:00 a.m., State Trooper Jerome Gordon was patrolling the Atlantic City Expressway in Hammonton when he received a report of an "erratic operator." Thereafter, Gordon noticed defendant's vehicle "driving between the right and the center lanes," without signaling. When the car passed Gordon's location in a cutout of the roadway, the trooper observed defendant holding a cellphone in his left hand.

Gordon then stopped the car, and upon approaching, immediately smelled alcohol emanating from the vehicle. Gordon made multiple requests for defendant's driving credentials, but defendant moved slowly and his hands were "fumbling when he was trying to get those documents." Defendant's eyes appeared "bloodshot and watery," with "droopy lids." Based on those

4

observations, Gordon asked defendant to exit the vehicle and perform standardized field sobriety tests.

Defendant failed to comply with Gordon's instructions by miscounting the number of steps requested for the walk-and-turn test, and incorrectly counting during the one-leg-stand test. During administration of the tests, defendant was "swaying, [with] saggy knees," "grasping for support and . . . staggering" with his "feet wide apart for balance." His speech was "rambling, slobbering," "slurred" and "whispering at times." When Gordon asked whether defendant had any injuries, defendant said he had a leg injury, but would not elaborate. Instead, defendant repeated he had a "medical problem." Gordon placed defendant under arrest for DWI.

At the police barracks, Gordon again administered Miranda[4] warnings to defendant, but defendant refused to sign the form confirming he had been so advised. Gordon then read to defendant the Attorney General's Standard Statement for Motor Vehicle Operators (standard statement), informing him of the consequences of a refusal to submit to a breath test. When ultimately asked whether he would submit to breath samples, defendant responded, "I'm not

---

[4]  Miranda v. Arizona, 384 U.S. 436 (1966).

A-0971-18T4

sure."  Gordon then read aloud the following passage from the standard statement:

> Your answer is not acceptable.  The law requires that you submit samples of your breath for breath testing.  If you do not answer or answer with anything other than "yes," I will charge you with refusal.  Now, I ask you again, will you submit to breath testing?

Defendant responded, "no."  Defendant acknowledged that he had consumed "[o]ne Heineken" beer the night before the stop.  Gordon memorialized defendant's response on the standard State Police drunk driving questionnaire.

Defendant testified at the hearing and gave a vastly different version of the events.  He claimed he never switched lanes on the Expressway, remaining in the right lane, where he "always drive[s]."  Defendant denied drinking the night before, stating "I never drink [sic] in my life."  He also said he was not holding his cell phone when he passed Gordon.  Rather, he claimed the cell phone had run out of battery power because he had been using it for GPS purposes during his trip from Pennsylvania.  Defendant also blamed the pain in his legs for his inability to perform the field sobriety tests.  He said he requested a lawyer after he was read the standard statement, claiming that he did not trust Gordon.  Defendant claimed he "begged [Gordon] to take a [breath] test."

A-0971-18T4

The municipal court made detailed factual findings, crediting the testimony of the trooper, thereby implicitly rejecting defendant's account. See State v. Locurto, 157 N.J. 463, 474 (1999). After reviewing the municipal court record, the Law Division judge made substantially similar factual and credibility findings.[5]

In particular, the Law Division judge determined "[Gordon's] testimony was consistent, reasonable and, together with the documentary record, was believable." Conversely, the judge found defendant's testimony was not credible. For example, the video evidence contradicted defendant's testimony that he crossed the center lane without signaling; Gordon's detection of the odor of alcohol and defendant's admission that he drank beer contradicted his trial testimony that he had not consumed alcohol; and defendant's alleged mistrust of Gordon defied his testimony that he "begged the trooper to administer the

---

[5] Citing our decision in State v. Kashi, the Law Division judge clearly understood his role was neither to affirm nor reverse the municipal court's rulings. 360 N.J. Super. 538, 545 (App. Div. 2003), aff'd o.b., 180 N.J. 45 (2004); see also State v. Robertson, 228 N.J. 138, 147 (2017). Further, the judge aptly made his own independent findings of fact based on the record before the municipal court. Robertson, 228 N.J. at 147. Nonetheless, the judge incorrectly "denied" defendant's appeal of his DWI, refusal, and use of a cell phone convictions, and "granted" defendant's appeal of his reckless driving conviction.

A-0971-18T4

[breath test]." Nor did the judge find credible defendant's testimony that he was not using his cell phone prior to the stop.

The Law Division judge set forth his conclusions of law based on the evidentiary record for each charge. The judge first considered the propriety of the DWI stop and subsequent field sobriety testing. Recognizing police only need reasonable articulable suspicion that a motor vehicle violation has occurred to stop a vehicle, "no matter how minor" the violation, the judge determined the stop was justified. The judge elaborated:

> [T]he trooper first observed . . . defendant using a mobile phone. The trooper also observed . . . defendant's vehicle switching between the right and center lanes without engaging the directional signal. This is consonant with the video record. When . . . Gordon stopped . . . defendant's vehicle, he noticed . . . defendant had bloodshot and watery eyes, and . . . fumbled while retrieving his license and registration. He likewise testified that [the] odor of alcoholic beverage was emanating from the vehicle.

Relevant to this appeal, the judge further determined defendant's reliance on Bernokeits was "misplaced." As the judge observed, in Bernokeits, we recognized a defendant could be ordered to perform field sobriety tests solely on the basis of reasonable suspicion of intoxication. 423 N.J. Super. at 374. In the present case, there existed sufficient evidence of defendant's intoxication to support Gordon's reasonable suspicion and justify field sobriety testing, i.e.,

defendant's slurred speech, bloodshot eyes, fumbling for documents and the odor of alcohol emanating from the vehicle.

Turning to the DWI charge, the judge summarized the governing principles and squarely addressed defendant's argument that his injuries prevented him from passing the sobriety tests:

> [D]efendant argues that he informed the trooper of injuries to his legs and back. However, even with the injuries, defendant was able to walk in a straight line and pivot correctly. Defendant's deficiencies on the walk and turn test were his failure to follow instructions (e.g.; walking [twelve] steps up and [eleven] steps back when instructed to take [nine] steps, up and back), and failure to walk heel to toe. This runs contrary to defendant's argument that his injuries caused him to fail the walk and turn test.
>
> When the trooper administered the one leg stand [test], . . . defendant had to use support and the trooper had to grab . . . defendant to keep him from falling over. Defendant was ordered to stand on the leg that was not injured. . . . [D]efendant also counted to ten several times, despite the trooper's directive that he continue counting in ascending order until directed to stop. . . . [D]efendant likewise admitted to drinking alcohol.

Finally, the judge noted defendant's refusal to submit to a breath test was "evidence of intoxication."

Addressing the refusal charge, the Law Division judge appropriately rejected defendant's "confusion" defense, recognizing that defense is not viable

9

in our State. Instead, the judge noted defendant's initial "I'm not sure" answer was followed by a "no" response to Gordon's second question from the standard statement. Accordingly, the judge determined defendant clearly understood Gordon's request for a breath sample, but "simply refused to submit to breath testing."

The judge likewise rejected defendant's contention that the standard statement questions posed by Gordon violated Miranda. According to the judge, that argument "r[an] contrary to the litany of cases indicating that anything short of unequivocal assent, even silence, constitutes refusal, in applying the implied consent statute, N.J.S.A. 39:4-50.2(a)." See, e.g., State v. Widmaier, 157 N.J. 475, 497 (1999); State v. Spell, 395 N.J. Super. 337, 344 (App. Div. 2007). Here, defendant was provided the warnings multiple times, and "simply refused to acknowledge them."

Finally, regarding use of a cell phone while driving, the judge accepted Gordon's "testimony as credible that he saw the phone raised in defendant's left hand." Further, defendant failed to satisfy any exception set forth in N.J.S.A. 39:4-97.3(b). This appeal followed.

II.

Our review is limited following a trial de novo in the Law Division conducted on the record developed in the municipal court. State v. Clarksburg Inn, 375 N.J. Super. 624, 639 (App. Div. 2005). We "consider only the action of the Law Division and not that of the municipal court." State v. Oliveri, 336 N.J. Super. 244, 251 (App. Div. 2001). Thus, we do not independently assess the evidence. Locurto, 157 N.J. at 471. Rather, we focus our review on "whether there is 'sufficient credible evidence . . . in the record' to support the trial court's findings." State v. Robertson, 228 N.J. 138, 148 (2017) (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

By contrast, our review of a legal determination is plenary. State v. Kuropchak, 221 N.J. 368, 383 (2015). However, we will reverse only after being "thoroughly satisfied that the finding is clearly a mistaken one and so plainly unwarranted that the interests of justice demand intervention and correction . . . ." Johnson, 42 N.J. at 162.

Moreover, "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Locurto, 157 N.J. at 474. Therefore, our review of the factual and

11

credibility findings of the municipal court and the Law Division "is exceedingly narrow." State v. Reece, 222 N.J. 154, 167 (2015) (quoting id. at 470).

Having carefully considered defendant's arguments in light of the record and controlling legal principles, we find no basis for reversal here. Pursuant to our "exceedingly narrow" standard of review, we affirm substantially for the reasons expressed in the Law Division judge's cogent written decision, which is supported by sufficient credible evidence in the record. See Locurto, 157 N.J. at 472. In doing so, we conclude defendant's arguments lack sufficient merit to warrant discussion in our opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0971-18T4