**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3802-17T1

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

KEITH R. GREENWOOD,

      Defendant-Appellant.

_____

Submitted February 14, 2019 – Decided August 12, 2019

Before Judges O'Connor and Whipple.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal No. 17-037.

Helmer Conley & Kasselman, PA, attorneys for appellant (Patricia B. Quelch, of counsel and on the brief).

Fredric M. Knapp, Morris County Prosecutor, attorney for respondent (Paula Cristina Jordao, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Keith Greenwood appeals from his conviction of driving while intoxicated (DWI), N.J.S.A. 39:4-50(a).  We affirm.

I

The evidence adduced at the municipal court trial pertinent to the issues on appeal is as follows.  Sergeant Steven Catalano of the Roxbury Township Police Department testified that, on November 12, 2015, he pulled over a car defendant was operating, because defendant was driving too closely to the vehicle Catalano was operating[1] and was improperly using his high beams.  In addition, defendant's front headlight assembly was "completely out."  During the course of the motor vehicle stop, Catalano detected the odor of alcohol on defendant's breath.  Defendant initially denied drinking but then admitted he had had "some drinks."

After administering field sobriety tests, Catalano concluded defendant was under the influence of alcohol.  Catalano placed defendant under arrest and read to him his Miranda[2] rights.  Defendant was taken to the Roxbury Police Department so the police could administer a breathalyzer test to him.  However, before the test started, defendant appeared to have some difficulty breathing and

_____

[1]  Catalano was driving an unmarked vehicle at the time.

[2]  Miranda v. Arizona, 384 U.S. 436 (1966).

2

A-3802-17T1

was "dry heaving." Therefore, the police called a local rescue squad, which transported defendant to a nearby hospital.

Maricel Jerez, one of the nurses who cared for defendant at the hospital, testified that when defendant was admitted to the emergency room, he was complaining of chest pain and anxiety. Patrolman Scott Weaver, who accompanied defendant to the hospital, testified that after defendant was stabilized, Weaver showed to and went over with defendant the "voluntary consent to draw blood form."[3] Defendant consented to and signed the form. Weaver stated defendant did not make any statements indicating an unwillingness to either sign the form or to have his blood drawn.

After defendant signed the form, Weaver handed a "blood draw kit" to Jerez, and watched her draw two vials of blood from defendant. Weaver transported the vials back to the police department, where they were refrigerated and ultimately taken to the New Jersey State Police, Office of Forensic Sciences.

Jerez testified that after she withdrew blood from defendant's arm, she handed the vials to a police officer. Because relevant to one of the issues on appeal, we note that, when she gave a summary of how she drew blood from

---

[3] Neither a copy of this form nor any other document admitted into evidence was provided in the record.

A-3802-17T1

defendant, she did not specifically mention whether she "rocked" the vials back and forth before handing them over to the officer. Finally, Jerez testified defendant was discharged from the hospital approximately one hour later.

Lisa Comunale, a forensic scientist of the New Jersey State Police, Office of Forensic Sciences, testified she was the scientist who tested and analyzed defendant's blood. She noted each vial contained seven milliliters of blood, and that an additive was present in each vial in order to preserve the blood. Consistent with the protocol in the office, she tested defendant's blood twice.

Comunale noted she worked for the State Police in the same capacity as a forensic scientist from 2003 to 2012. She has a Bachelor of Science and a Master's Degree in forensic science. In 2012, she took a three-year leave of absence. At the time she left in 2012, she was "certified"; she did not indicate what it meant to be certified. However, when she returned in 2015, she had to be recertified because of her three-year absence. When she analyzed defendant's blood in November 2015, she had not yet been recertified. Therefore, Joseph Messana, another person in the department who was certified, had to and did review her work to ensure the results of her testing were accurate.

Messana, who in 2015 had been a forensic scientist of the Office of Forensic Sciences for twenty-eight years and was certified, testified he reviewed

Comunale's work and determined she correctly analyzed defendant's blood. He then affixed his signature to and thereby certified the laboratory report setting forth the test results of defendant's blood. He stated the average of the two tests Comunale conducted on defendant's blood was .163, plus or minus .003, and that the probability defendant's blood alcohol value was in fact between .160 and .166 was ninety-nine percent.

After Messana signed and generated the laboratory report, Comunale's analysis was peer reviewed by her supervisor. Thereafter, her analysis was reviewed by another scientist. Both the former and the latter approved Comunale's results.

Defendant called Gary Lage as his expert witness. The municipal court judge found Lage to be an expert in the fields of pharmacology and toxicology. Defendant sought to have Lage qualified as an expert in "laboratory procedures and the correct procedures in which blood is supposed to be analyzed in a lab," but the judge declined to do so.

Lage testified that he was present in the court room when Nurse Jerez testified about how she drew blood from defendant. He noted her testimony failed to reveal whether she followed the "proper protocol." Lage testified vials come with additives in them in powder form. He claimed the "recommended

A-3802-17T1

protocol" requires that, after blood is drawn into a vial, the vial be held between a person's thumb and forefinger and "rocked back and forth" a minimum of ten times so the additives will dissolve in the blood. Lage did not identify the source of such protocol.

According to Lage, there is the "potential" that any glucose in a patient's blood will turn into ethanol. The additives preclude glucose from being converted into ethanol, which might cause a higher blood alcohol reading than would have been otherwise. However, to be effective, the additives must be dissolved in the blood in accordance with the protocol.

Lage further testified there were only seven instead of eight milliliters of blood in each tube. He claimed the higher concentration of additives could have "potentially" caused a false elevation of blood alcohol, and thus affected the reliability of the blood alcohol analysis. However, he then conceded that dissolving additives in seven instead of eight milliliters of blood was not significant.

Lage was critical of the fact it was Messana and not Comunale who signed and certified the laboratory report, and that the peer review of Comunale's work was not done until after the laboratory report was certified. We note Lage was not qualified by the court to render an opinion on laboratory procedures.

6

Further, Lage did not opine that certifying the laboratory report before the peer review in fact affected the reliability of the information in such report. Significantly, Lage was not critical of Comunale's analysis of defendant's blood.

Relying upon Catalano's testimony detailing how poorly defendant fared when undergoing the field sobriety test, the municipal court judge found defendant had been under the influence of alcohol at the time he was pulled over. The judge convicted him of driving while intoxicated, N.J.S.A. 39:4-50, as well as failure to maintain lamps, N.J.S.A. 39:3-66; following too closely, N.J.S.A. 39:4-89; improper use of high beams, N.J.S.A. 39:3-60; and reckless driving, N.J.S.A. 39:4-96.

The municipal court judge rejected the State's contention there was proof beyond a reasonable doubt defendant's blood alcohol concentration (BAC) was above 0.08 percent, the allowable limit pursuant to N.J.S.A. 39:4-50(a). The judge stated he was not satisfied the blood was drawn in accordance with appropriate procedure, a decision he based upon "prior case law and prior procedure that has been presented before the court." The judge did not cite the case law that he claimed enabled him to find that the blood was not drawn in accordance with the appropriate procedure. The municipal court judge also

7 A-3802-17T1

rejected the premise defendant's BAC was above 0.08 percent on the ground Comunale was not certified when she analyzed defendant's blood.

Defendant appealed his convictions to the Law Division for a trial de novo. Following that trial, the judge in the Law Division concluded the field sobriety test results did not provide sufficient grounds to convict defendant of DWI, but the judge determined there was evidence beyond a reasonable doubt that defendant's BAC was above 0.08 percent – as found by the forensic scientists – when he was pulled over. The Law Division judge convicted defendant of driving while intoxicated, N.J.S.A. 39:4-50(a); failure to maintain lamps, N.J.S.A. 39:3-66; following too closely, N.J.S.A. 39:4-89; and improper use of high beams, N.J.S.A. 39:3-60.

II

On appeal, defendant asserts the following points for our consideration:[4]

> POINT I: THE SUPERIOR COURT, LAW DIVISION, COULD NOT LEGALLY FIND DEFENDANT GUILTY BASED UPON A PER SE VIOLATION BECAUSE THE BLOOD TEST RESULTS WERE SUPPRESSED BELOW AND THE TRIAL DE NOVO WAS LIMITED TO THE FINDING OF GUILTY BASED UPON OBSERVATIONS ONLY.

---

[4] Defendant appealed only his conviction for DWI.

POINT II:  THE TRIAL COURT ERRED BY NOT
DISMISSING THE MOTOR VEHICLE
SUMMONSES FOR VIOLATION OF
DEFENDANT'S RIGHT TO A SPEEDY TRIAL.

POINT III:  DEFENDANT'S CONSENT TO
PROVIDING BLOOD WAS INVALID.

POINT IV:  THE BLOOD TESTS WERE INVALID.

Having considered the record and applicable legal principles, we reject defendant's arguments and affirm.

An appeal of a municipal court conviction must first be addressed by the Law Division de novo.  R. 3:23-8.  The role of the Law Division is to make independent findings of facts and conclusions of law based on the record developed in the municipal court.  State v. Avena, 281 N.J. Super. 327, 333 (App. Div. 1995) (citing State v. Johnson, 42 N.J. 146, 157 (1964)).  The Law Division on an appeal from the municipal court does not search the record for error, or determine if there was sufficient credible evidence to support a conviction.  The Law Division is required to decide the case completely anew on the record made before the municipal judge, "giving due, although not necessarily controlling, regard to the opportunity of the" judge to evaluate witness credibility.  Johnson, 42 N.J. at 157; see also State v. Cerefice, 335 N.J. Super. 374, 382-83 (App. Div. 2000).  The Law Division judge performs "an

9

independent fact-finding function in respect of defendant's guilt or innocence," and must "make his [or her] own findings of fact." State v. Ross, 189 N.J. Super. 67, 75 (App. Div. 1983).

We review the Law Division's decision employing the "substantial evidence rule." State v. Heine, 424 N.J. Super. 48, 58 (App. Div. 2012). "Our review is limited to determining whether there is sufficient credible evidence present in the record to support the findings of the Law Division judge, not the municipal court." State v. Clarksburg Inn, 375 N.J. Super. 624, 639 (App. Div. 2005) (citing Johnson, 42 N.J. at 161-62). However, we review the Law Division's interpretation of the law de novo without according any special deference to the court's interpretation of "the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Defendant first contends the Law Division judge erred when he found defendant violated N.J.S.A. 39:4-50(a) on the ground his BAC was above 0.08 percent when he was pulled over by Catalano, because the municipal court judge suppressed the results of the blood test results and, "entered an acquittal of the per se portion of the DWI statute."

First, even if the municipal court judge had suppressed the evidence of the blood test results, the Law Division judge was free to make his own assessment of the evidence in the record. "That is, indeed, the essence of a trial de novo, which is based on the record in the municipal court." State v. Kashi, 360 N.J. Super. 538, 545 (App. Div. 2003), aff'd 180 N.J. 45 (2004). As we stated in Kashi, a trial de novo in this context "is not an appellate one; the Superior Court judge does not affirm or reverse what occurred in the municipal court. Rather, the Superior Court judge reviews the transcript and makes an independent determination of the sufficiency of the evidence presented . . . ." Ibid.

Here, that is what the Law Division judge did. He reviewed the transcript and made an independent determination of the evidence presented. Of course, the "court conducting a de novo review must give due, but 'not necessarily controlling, regard to the opportunity of the [municipal court] to judge the credibility of the witnesses[,]'" State v. Kashi, 180 N.J. 45, 48 (2004) (quoting Johnson, 42 N.J. at 157), but none of the Law Division judge's findings conflicted with that principal.

Second, the municipal court judge did not suppress the evidence of the blood test results. Defendant made a motion to suppress those results but it was denied. In support of his argument the judge did suppress those results,

11

defendant quotes the following excerpt from the municipal court's judge's final decision:

> [T]his court will not allow the results of the blood draw and its determination into the court's determination. And I find that those results are flawed for the reasons set forth on the record, and I am not going to consider that before the court.

Defendant quotes the above statement out of context. The municipal court judge did not find the blood test results reliable, but he did not suppress evidence of them. The above excerpt merely references the judge's finding he did not consider the results of the blood test to be trustworthy.

The Law Division judge reviewed the same evidence de novo and found the blood test results valid and reliable. Finally, even if the municipal court judge had suppressed the evidence of the blood test results, that would not have been an acquittal of the charge defendant operated a vehicle when his BAC was above 0.08 percent. See Kashi, 360 N.J. Super. at 545-46.

Defendant contends his consent to permit the police to draw blood from him was not provided knowingly and voluntarily and, therefore, his consent was not valid. Specifically, in his brief defendant claims that when he gave his consent, he was having a "severe panic attack," and thus cannot be deemed responsible for his actions. We reject this argument because there was no

evidence from a medical expert establishing he had this condition, let alone that such condition precluded him from rendering a knowing and voluntary consent.

Defendant also argues the police violated his Fifth Amendment[5] rights when they asked him if he consented to having his blood drawn. He notes he had asserted his Fifth Amendment rights at the police station before he was taken to the hospital, and that the police violated those rights by asking him a question that elicited a response. We disagree. A police officer's request that a suspect submit to a blood-alcohol test and the routine questions attendant to that request are not interrogation within the meaning of Miranda. State v. Stever, 107 N.J. 543, 553 (1987). For that reason, the officer's request defendant submit to a blood test did not violate his Fifth Amendment rights.

Defendant next argues the blood tests were invalid because, given she was not certified, Comunale was not qualified to determine the blood alcohol content of his blood sample. We disagree. First, defendant's own expert testified he did not have an opinion about the quality of Comunale's analysis of defendant's blood sample, and did not proffer any opinion her analysis was deficient in any way.

---

[5] U.S. Const. amend. V.

A-3802-17T1

Second, defendant does not cite and we were unable to find any legal authority that requires a forensic scientist who performs the kind of analysis Comunale conducted in this matter be licensed or certified by a state licensing agency. Because the topic was not explored at trial, there is no evidence of what the term "certified" as used by Comunale and Messana meant, which merely may have been a reference to an internal certification process within the Office of Forensic Sciences. Regardless, defendant's expert did not voice any criticism of Comunale's ability to perform the subject analysis or of the analysis itself.

Defendant argues that, according to Lage, there was no evidence Nurse Jerez rocked the vials that contained his blood back and forth to effectuate dissolving the additives in the blood. Thus, defendant maintains, the ethanol found in his blood could have originated from glucose rather than from an alcoholic beverage.

We note the source of Lage's claim the vial should have been rocked back and forth ten times as soon as blood is withdrawn is an unidentified "recommended protocol." In our view, his testimony on this issue constituted an inadmissible net opinion because there was no evidence of the source of that protocol or standard. See Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 373 (2011) ("[A] trial court may not rely on expert testimony that . . . fails

to establish the existence of any standard about which the expert testified."). There is no indication of who authored the recommended protocol, and whether such protocol is recognized and accepted within the medical community. In essence, Lage merely provided a "bare opinion that has no support in factual evidence or similar data . . . ." Id. at 372.

We considered defendant's remaining arguments, and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

We are satisfied there is sufficient credible evidence present in the record to support the Law Division judge's findings. Clarksburg Inn, 375 N.J. Super. at 639 (citing Johnson, 42 N.J. at 161-62).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION