**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1376-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WHEN PIGS FLY, LLC,

    Defendant-Appellant.

_____

> Argued June 9, 2022 – Decided July 25, 2022
>
> Before Judges Hoffman, Geiger and Susswein.
>
> On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Municipal Appeal No. 15-11-19.
>
> George T. Daggett argued the cause for appellant.
>
> Jonathan E. McMeen argued the cause for respondent (Laddey, Clark & Ryan, LLP, attorneys; Jonathan E. McMeen, on the brief).

PER CURIAM

Defendant, When Pigs Fly, LLC, (WPF or defendant) appeals from a January 11, 2021 Law Division order denying its motion for reconsideration of trial de novo convictions for municipal ordinance violations following a trial in municipal court. The ordinance violations pertain to limitations imposed on the storage of items in airplane hangars adjacent to Sussex Airport in Wantage Township. After carefully reviewing the record in light of the arguments of the parties and the applicable legal principles, we affirm the convictions and sentence substantially for the reasons set forth in the Law Division judge's thorough August 31, 2020 written opinion rendering de novo guilty verdicts, and the ensuing January 11, 2021 written opinion denying defendant's motion for reconsideration.

I.

The circumstances giving rise to this prosecution developed over the course of many years. To provide context, we briefly summarize the pertinent facts and procedural history, which we discern from the record. In 1997, William Gennaro, the owner of WPF, applied to the Wantage Township Planning Board (Planning Board) "for preliminary site approval so as to permit the . . . construct[ion] of airplane hangars." The Planning Board concluded that WPF satisfied the requirements of the Municipal Land Use Law and proposed a

2

use that was consistent with Wantage Township's Zone Plan and Master Plan. On September 16, 1997, the Planning Board issued a Resolution concerning the use of the property. That Resolution reflected an intention to store aircrafts.

In 2006, WPF applied to the Wantage Land Use Board (Board) for an amended preliminary site plan and final site plan, seeking relief from certain prior conditions of approval. WPF sought to store vehicles, other than airplanes, in the hangars, including collectible cars, recreational vehicles, snowmobiles, boats, tractors, and other related vehicles "as permitted customary and accessary use in Industrial and Airport Hazard Zones." The Board denied the request, determining that "the storage of a multitude of types of vehicles . . . was [not] intended as a permitted customary and accessory use in applicable Zones" for the property at issue. The Board concluded that the only vehicles permitted to be stored in the hangars are those "use[d] to arrive at and depart from the Subject Property."

In 2009, WPF applied to the Board for an amended preliminary and final site plan with "C" variance[1] relief "so as to permit the storage of additional

_____

[1] Pursuant to N.J.S.A. 40:55D-70(c), a "C" variance "is available from any regulation, other than restrictions on use, enacted pursuant to the zoning power, including, for example, requirements as to lot size, setbacks, land coverage, height, and parking." Com. Realty and Res. Corp. v. First Atl. Props. Co., 235

materials in airplane hangars . . . ." The Board granted the requested relief, determining that various items "be they tractors, cars, snowmobiles, boats, trailers, ATVs, motorcycles, bicycles, canoes and campers [are] clearly accessory to the principal use of an airplane storage hangar." We refer to this as the 2009 Resolution. The Board determined that the use proposed by defendant would be "incidental to the principal use as is envisioned under N.J.S.A. 40:55D-70(c) and case law." The Board added:

> Having reached this determination, the Board specifically notes the hangars in order to accommodate this additional activity must continue to function as an airplane hangar, and therefore the Board shall require the Applicant to specifically delineate in each of the hangars with precision the areas where the airplane is to be kept along with the other storage materials. It is not the Board's intent to allow these hangars to become depositories for all kinds of bric-a-brac and other collectibles[,] but rather as equipment that one would commonly associate with an airplane and its users.

The relief afforded under the 2009 Resolution was set to expire on February 17, 2011. As we explain, on several occasions, WPF sought and received an extension of the relief afforded by the 2009 Resolution. We refer to the resolutions extending the relief granted under the 2009 Resolution as

N.J. Super. 577, 587 (App. Div. 1989) (quoting Davis Enters. v. Karpf, 105 N.J. 476 (1987)).

extension resolutions. In 2011, the Board granted WPF's request for an extension resolution until February 17, 2013. In 2012, WPF again requested an extension resolution, which was granted through February 17, 2014. WPF then filed a third extension request, which was granted by an extension resolution effective through June 30, 2015. The last extension resolution sought by WPF was requested in 2015. The Board granted that extension resolution through June 30, 2018.

In 2017, WPF pursued a different approach. It applied to the Board to expand the permitted uses of its airport hangars. While WPF was at that time permitted to use the hangars for certain storage purposes pursuant to the 2009 Resolution and subsequent extension resolutions, WPF's 2017 application sought to "expand the definition of 'storage' to include items 'not accompanied by airplanes and the like.'" In support of its application, WPF relied in part on a 2016 Federal Aviation Administration (FAA) policy.[2] The Board considered

---

[2] The FAA policy "applies to all aircraft storage areas or facilities on a federally obligated airport . . . ." Policy on Non-Aeronautical Use of Airport Hangars, 81 Fed. Reg. 38,906 (June 15, 2016). We believe the FAA policy does not apply in this case. Even assuming for argument's sake that the FAA policy applies, it "neither creates nor constitutes a right to store non-aeronautical items in hangars" and requires written approval from the FAA. Id. at 38, 910–911. Nothing in the record suggests that WPF obtained written approval from the FAA.

the application at a hearing on September 26, 2017.  On October 24, 2017, the Board denied WPF's application to expand the use of hangars "to allow general storage without restriction."

On December 13, 2017, WPF filed a civil action in lieu of prerogative writs challenging the Board's denial of WPF's expansion application pursuant to N.J.S.A. 40:55D-70(c).  WPF contended in its two-count complaint that the Board's decision was arbitrary and capricious, and that it did not comport with the FAA policy regarding storage of items in airplane hangars.

On February 22, 2019, the Assignment Judge issued a thorough written opinion in the civil matter, commenting that the hearing before the Board "was notable for its acrimony" and noting that the Board chairman had a personal interest in the adjoining property.[3]  The Assignment Judge determined that the Board chairman's comments "poisoned the spirit of impartiality" and that such

---

[3]  The Assignment Judge noted that at the start of the hearing, the Board Chairman gave extensive opening remarks in which he expressed dissatisfaction with WPF's failure to comply with ordinances and previous representations made to the Board.  The judge further determined that the Board Chairman (1) alleged that WPF previously lied to the Board regarding prior applications, (2) acknowledged he had previously recused himself from reviewing WPF's applications due to a conflict of interest, (3) advised the Board of facts and conclusions based on his personal knowledge outside of the record, and (4) admitted he had preconceived notions about WPF's application.  The court also noted that additional Board members offered facts that were not in evidence.

"animosity spread to the Board Attorney and other Board Members, tainting their objectivity."  As a result, the Assignment Judge remanded the matter to the Board for a new hearing.[4]  The record before us suggests that the remand hearing has not yet occurred.

The previously-granted extension of relief afforded under the last extension resolution expired on June 30, 2018.[5]  So far as the record reflects, WPF did not apply for another extension resolution or seek any form of judicial relief to extend the authority to store items as had been permitted under the terms of the 2009 resolution and ensuing extension resolutions.  On that date, Patrick Stefanelli, a zoning officer for Wantage Township, inspected the fifty-four hangars on WPF's property to determine whether it was in compliance with the resolutions associated with the property at issue.[6]  Stefanelli's inspection determined that twenty-five hangars were satisfactory—meaning those hangars

---

[4]  We note that the order granting a remand in the prerogative writs action is not before us in this appeal.  We emphasize that the civil action initiated by WPF is separate and distinct from the quasi-criminal matter now before us.

[5]  We note the expiration occurred after the Board had denied the variance application, but before the Assignment Judge issued its ruling remanding to the Board for a new hearing on the variance application.

[6]  The record indicates that Stefanelli obtained a court order authorizing entry to conduct the administrative inspection.

complied with the resolutions. Those hangars "had an [airplane] being stored in it or multiple [airplanes] being stored in them." Stefanelli's inspection revealed, however, that "about [nineteen] of the [hangars] had motor vehicles, tools, different types of equipment being stored . . . with . . . a couple parts to an airplane and/or some drones." Because most of those hangars had drones or "remote controlled airplane[s]," Stefanelli determined that such hangars were not in compliance with the resolutions.

Stefanelli subsequently issued three summonses, charging WPF with violation of the following: (1) Wantage Municipal Code § 16-3 (site plans); (2) Wantage Municipal Code § 13-12A.1 (violation of permitted uses in Airplane Hangar Zone); and (3) Wantage Municipal Code § 13-25.2 (failing to obtain a zoning permit).

On June 28, 2019, the municipal code violations were tried in municipal court. Prior to hearing testimony, the municipal court judge denied WPF's motion to dismiss.

Stefanelli testified that he inspected and took photographs of the hangars on WPF's property and determined that approximately nineteen of the hangars did not comply with the resolutions for the property; those hangars were being used to store other motor vehicles, tools, equipment, drones, model airplanes,

8

remote-controlled airplanes, or drones in unopened boxes. The hangars did not comply because the applicable resolutions permitted airplane or aeronautical storage. He also testified that vehicles used as transportation to and from the hangars could be stored as an ancillary use.

Stefanelli further testified that he did not consider the drones or remote-controlled airplanes to be aeronautical in nature, pursuant to the applicable resolutions associated with the property. He added that "the permitted use of the hangar would be for [airplane] storage, aeronautical use[,] and any other uses that . . . would have been secondary to" those permitted uses.

On cross-examination, Stefanelli acknowledged that he had previously disqualified himself from one of WPF's applications submitted to the Board and testified that he knew WPF had a pending civil action in Superior Court. He had denied having knowledge of the civil lawsuit at the time of his inspection on June 30, 2018.

Stefanelli also testified that he was unaware that drones are regulated under the FAA. He acknowledged that storage of an actual airplane is not the only permissible use in a hangar, but that other aircraft, such as a helicopter, would pass muster under the resolutions. Stefanelli further testified that drones

9

were located in almost every hangar on WPF's property, and that drones would fall within the category of "aircraft."

The owner of WPF, Gennaro, testified that he was familiar with the FAA policy governing hangars. Specifically, he noted that the policy allows for alternative uses of vacant hangars at federally-owned airports in order to keep those airports economically viable. The policy is silent as to off-airport or privately-owned facilities.

Gennaro also testified that he does have hangars that do not store airplanes; those hangars store drones. Gennaro testified that he considered drones to be aircraft because they are regulated under the FAA and require registration and pilot certificates.

On cross-examination, Gennaro testified that approximately twenty-two hangars do not contain an airplane, but rather contain either a drone or model airplane. He also acknowledged that the drones and model airplanes were both unmanned aircrafts. Additionally, he acknowledged that FAA regulations do not permit drones to land at airports, without permission, and are required to remain three miles away from airports when flying.

Gennaro further testified that he made substantial income from renting hangars for drones or model airplanes. While acknowledging that the applicable

resolutions do not permit general storage in the hangers, Gennaro maintained that storing drones and model airplanes did not constitute general storage. However, he acknowledged that the original purpose of the 1997 resolution was for individuals to "take [their] airplanes, fly it to [the] hangar, take [their] personal automobile out, bring it back, [and then] take [their] airplane back."

Gennaro also acknowledged that, although he was in the process of seeking approval to use the hangars for general storage, at the time the summonses were issued he had not yet received approval from the Board. He also acknowledged that the photographs taken during Stefanelli's inspection "probably" reflected the current state of those hangars.

The municipal court judge rendered an oral decision in open court on November 4, 2019. The judge recounted the history of the property and the testimony from the trial. Ultimately, the municipal judge was "convinced beyond a reasonable doubt that the . . . pictures and testimony of . . . Stefanelli are credible and indeed dispositive of a guilty finding with regard to improper use of what's allowed in [the] zone" where WPF's property is located. The municipal judge emphasized that WPF was storing items "beyond the scope of what was approved" in the initial 1997 resolution and subsequent resolutions. The municipal judge thereupon found WPF guilty of twenty-one counts of

11

operating a non-permitted use in an airport hazard zone, Wantage Municipal Code § 13-2A.1, and one count of failing to obtain a zoning permit, Wantage Municipal Code § 13-25.2(a)(2). The judge found WPF not guilty of the site plan violation.

Pursuant to Wantage Municipal Code § 3.1.1,[7] the municipal judge sentenced WPF to serve ninety days of community service and ninety days in jail, which would be suspended in its entirety if the property were to come into conformance with the resolutions. The judge also imposed a $2,000 fine per violation, totaling $44,000.

WPF appealed the municipal court convictions and sentence to the Superior Court for a trial de novo. On August 21, 2020, the Law Division judge

---

[7] Wantage Municipal Code § 3.1.1 states,

> For violation of any provision of this chapter, any other chapter of this revision, or any other ordinance of the township where no specific penalty is provided regarding the section violated, the maximum penalty, upon conviction, shall be a fine not exceeding $2,000, or imprisonment for a period not exceeding 90 days, or both. In addition to or in lieu of a fine or imprisonment, the court may impose a penalty of community service for a period not exceeding 90 days. (N.J.S.A. 40:49-5).
>
> [(emphasis added).]

heard oral arguments. WPF raised the following points in its trial de novo appeal:

> (1) that the hangars at Sussex Airport are vacant due to the deteriorated conditions of the airport facilities and [WPF] allowed non-aeronautical uses in order to keep the hangars viable; (2) that it sought approval from the Land Use Board for the use which it was permitting in the hangars (i.e. general storage without the presence of an "aircraft") but, due to the Land Use Board's bias against it, it has been unfairly deprived of such approval; (3) that it has attempted to implement FAA policy in keeping the hangars viable by permitting non-aeronautical uses, and; (4) that his [c]ourt can implement the FAA policy of keeping the hangars viable by setting aside the fine imposed by the Municipal Court and allowing Appellant to proceed to the newly-reconstituted Land Use Board.

On August 31, 2020, the Law Division judge issued a twelve-page opinion. The court began its analysis by noting that "there has been no persuasive legal argument set forth by [WPF] demonstrating that the FAA policy preempts or in any way overrides local zoning ordinances governing [WPF's] hangars." The court recognized that both parties agree that WPF was in violation of the resolutions and local ordinances. The court also recognized that the FAA policy "does not create a right to store non-aeronautical materials in airplane hangars and airport sponsors are free to limit or prohibit such storage operations within their discretion." Further, the court noted that "any use of hangers for

13

non-aeronautical purposes under the FAA policy requires advance written approval from the FAA." The record did not reveal any such approval.

The trial court then considered whether drones, model airplanes, or remote-controlled airplanes qualify as "airplanes" or "aircrafts" under the applicable resolutions and ordinances. The trial court noted that while it is unclear whether the FAA considers these items as "aircrafts," "FAA regulations and policy do not control whether [WPF] was in violation of Wantage Township zoning ordinances and resolutions at the time the summonses were issued" and that "[a]ny argument that the drones [WPF] was keeping in the hangars constitutes 'airplanes' or 'aircrafts' under the applicable local resolutions is belied by the fact that [WPF] continuously sought approval . . . to amend the scope . . . of permitted uses." The court added, "[s]uch approval would not be necessary if the drones[,] which [WPF] was keeping[,] actually constituted 'airplanes' under the governing resolutions."

The court further determined that even if the drones were considered airplanes under the governing rules, "there is no question that the storage of the drones or toy airplanes here was entirely accessory to and subsumed by the hangars' use for general storage." This was so because, as the municipal court also found, WPF "[e]ffectively made a 'farce' of the zoning ordinances and

14

resolutions by 'arranging' to have unboxed . . . drones or other model aircrafts stored amongst . . . the clutter."

The court acknowledged the bias WPF experienced at the 2017 Board hearing and the argument that absent such bias, WPF would have succeeded in obtaining the variance for the general storage it had sought. The court rejected WPF's argument because (1) the Board's determination about a variance, absent the bias, is "pure speculation"; (2) WPF had received a summons in 2016 for an identical violation, which was before any bias was found by the Superior Court; and (3) WPF was in violation of the resolutions and ordinances (2018) prior to any judicial finding of bias (2019).

The court thereupon found WPF guilty of twenty counts of operating a non-permitted use in an airport hazard zone, Wantage Municipal Code § 13-2A.1.[8] The court imposed a $2,000 fine for each of the twenty counts, totaling $40,000, but declined to impose any period of incarceration or community service.

Regarding the failure to obtain a zoning permit, Wantage Municipal Code § 13-25.2(a)(2), the Law Division judge disagreed with the municipal court's

---

[8] The trial court determined that one of the photographs of the hangars was duplicative of another. As a result, it did not impose the additional one count that the municipal court found.

finding. The Law Division judge determined that WPF did attempt to obtain zoning permits in 2017 but was denied a fair procedure because the Board was biased. The Law Division judge added, "[t]o hold [WPF] liable for violation of this ordinance would, in this [c]ourt's view and under these circumstances, violate due process." As a result, the court dismissed the zoning permit charge.

WPF subsequently filed a motion for reconsideration. On January 6, 2021, the trial court heard oral arguments. On January 11, 2021, the trial court issued a five-page opinion, denying the motion.

As a threshold matter, the trial court noted that "[a]ll of [the] facts [in this case] have already been considered and rejected by this [c]ourt . . . ." The court next noted that WPF failed to "cite to any controlling precedent which the [c]ourt overlooked, []or any precedent governing the standards of the underlying or instant motions." As well, WPF did "not offer new factual material, or even new conceptualizations of already-proffered facts."

As a result, the trial court denied the motion for reconsideration because the motion was merely "an attempt at appealing the [c]ourt's decision indirectly." This appeal follows.

Defendant raises the following contentions for our consideration:

A-1376-20

POINT I

THE DECISION OF THE SUPERIOR COURT ON A TRIAL DE NOVO.

POINT II

A USE VARIANCE (D) MUST SHOW THAT A BENEFIT COMES TO THE COMMUNITY. IMPLEMENTING THE FAA POLICIES WOULD HAVE DONE THAT.

## II.

Because we affirm substantially for the reasons explained in the Law Division judge's thorough and thoughtful opinions, we need not address defendant's contentions at length. We add the following comments:

In a trial de novo, the Law Division is obliged to "determine the case completely anew on the record made in the Municipal Court, giving due, although not necessarily controlling, regard to the opportunity of the [municipal court judge] the credibility of the witnesses." State v. Johnson, 42 N.J. 146, 157 (1964). In the context of a trial de novo, the Law Division

> does not affirm or reverse what occurred in the municipal court. Rather, the . . . judge reviews the transcript and makes an independent determination of the sufficiency of the evidence presented, giving appropriate deference to any credibility assessments that the municipal court judge may have made . . . .

A-1376-20

"A trial de novo by definition requires the trier to make his own findings of fact."

[State v. Kashi, 360 N.J. Super. 538, 545 (App. Div. 2003).]

Moreover, the Law Division proceeding is not an appellate one. The judge determines anew, based on the municipal court record, whether the State proved the defendant guilty beyond a reasonable doubt. Ibid.

Our own standard of review on appeal from a trial de novo in the Law Division uses a markedly different standard from that applied by the Law Division judge. Unlike the Law Division, we do not make our own findings of fact and our standard of review is deferential. State v. Locurto, 157 N.J. 463, 474 (1999). We focus our review on "whether there is 'sufficient credible evidence . . . in the record' to support the trial court's findings." State v. Robertson, 228 N.J. 138, 148 (2017) (alteration in original) (quoting Johnson, 42 N.J. at 162).

Deference is especially appropriate when, as in this case, two judges have examined the facts and reached the same conclusion. As the Supreme Court made clear in Locurto, "[u]nder the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional

showing of error." 157 N.J. at 474 (citing <u>Midler v. Heinowitz</u>, 10 N.J. 123, 128–29 (1952)). Therefore, our review of the factual and credibility findings of the municipal court and the Law Division "is exceedingly narrow." <u>State v. Reece</u>, 222 N.J. 154, 167 (2015) (quoting <u>Locurto</u>, 157 N.J. at 470). However, we are not bound by a trial court's interpretations of either the law or the legal consequences that flow from established facts. <u>See</u> <u>Manalapan Realty L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995); <u>State v. Harris</u>, 457 N.J. Super. 34, 43–44 (App. Div. 2018).

Applying this deferential standard of review, we conclude the Law Division judge properly found that WPF violated the applicable resolutions and ordinances. As the Law Division judge aptly stated:

> There is no dispute that [WPF] was in violation of the governing resolutions and ordinances. As . . . Stefanelli and . . . Gennaro both testified, [WPF] did not have permission to store the materials it was storing in the hangars at the time the summonses were issued. Although [WPF] suggested at oral argument that its willful violation . . . was an attempt to bring itself in line with FAA policy, the fact remains that [WPF] was in actual violation of Wantage Township ordinances. The general storage . . . in its hangars was specifically disallowed under both the 2006 and 2006 Resolutions. The pictures taken by . . . Stefanelli unequivocally show that [WPF] was utilizing the airplane hangars directly contrary to what was permitted under the 2009 Resolution. The photographs prove that there are no airplanes or manned aircraft stored in any of the

19

hangars which form the basis of the Municipal Court's decision and that there would be little room, if any, to store such aircraft given the state of the hangars in the pictures. As the Municipal Court found, this Court also finds that Appellant effectively made a "farce" of the zoning ordinances and resolutions by "arranging" to have unboxed . . . drones or other model aircraft stored amongst the clutter. This clearly is not what was envisioned by the Land Use Board in permitting accessory storage within Appellant's hangars under the governing 2009 Resolution.

The trial court also considered and appropriately rejected WPF's argument that but for the bias WPF experienced during the 2017 Board hearing, WPF would have succeeded in obtaining a variance to permit general storage. We agree with the Law Division judge that this argument is "pure speculation." We add that the trial record clearly shows that WPF was in violation of the applicable resolutions and ordinances prior to any judicial finding of bias by the Board.

To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant consideration in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1376-20